# STATE v. VACOS.

No. 2207.   Decided December 27, 1911 (120 Pac. 497).

1. CRIMINAL LAW—TRIAL—REMARKS AND CONDUCT OF JUDGE—COM-
MENTS ON DEFENSE.  Before one charged with murder in the
first degree was arraigned, his attorney, the county attorney,
the sheriff, and others concluded that, if accused would plead
guilty to second-degree murder, they would recommend a sen-
tence not exceeding twenty-five years, and accused pleaded
guilty of murder in the second degree, but the trial judge
refused to concur in the matter of punishment, and said that
he was "left with the bald charge and the bald plea to it,
which is that the defendant is guilty of maliciously taking the
life of another human being, though without premeditation.
. . . I do not feel that the malicious killing of a human
being would justify me in sentencing a man to imprisonment
for such a period as twenty-five years.  It seems to me that
that is not an adequate punishment."  *Held*, that the rulings
of the court being proper and fair, and accused having been
found guilty of the degree of murder to which he had pleaded,
there was nothing in the remarks or conduct of the trial judge
prejudicial to the accused.[1]   (Page 172.)

2. HOMICIDE—ADMISSIBILITY OF EVIDENCE—INTENT—THREATS.  Two
witnesses testified that, while passing along a street near
the store of deceased a short time before the homicide, they
saw accused and heard him say to others, "I will get him to-
night," but did not know whom accused was talking about.
There was also testimony that accused stated to others that
unless his property, which had been attached by deceased, was
returned within a short time, he would kill deceased, and
testimony as to other statements by accused bearing upon his
feelings towards deceased.  *Held*, in view of the other evidence,
that, although the threat testified to by the two witnesses was
general, it was admissible; it being for the jury to say to whom
it referred.   (Page 174.)

3. HOMICIDE—ADMISSIBILITY OF EVIDENCE—CHARACTER AND HABITS
OF PERSON KILLED.  Accused testified with regard to special
acts and conduct of the deceased, from which the jury could
infer that deceased was a quarrelsome and dangerous man,
that he was in the habit of carrying a revolver which accused
had seen him use threateningly in altercations with others,
and that deceased was an oppressive and violent man.  *Held*,

---

[1] State v. Riley, 126 Pac. 294, 41 Utah —.

that, evidence as to the general reputation of the deceased as a peaceable, quiet, and law-abiding citizen was admissible. (Page 175.)

4. HOMICIDE—EVIDENCE—BURDEN OF PROOF—EXCUSE OR JUSTIFICATION. Under Comp. Laws 1907, sec. 4856, providing that, upon a homicide being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, shall devolve upon accused, unless the proof on the part of the prosecution tends to show that the defendant was justifiable or excusable, the duty or burden is upon defendant to prove justification or excuse, but he is not required to establish either by a preponderance of the evidence, it being sufficient to create a reasonable doubt in the minds of the jury whether the homicide in question was justifiable or not.[2] (Page 177.)

5. CRIMINAL LAW—TRIAL—INSTRUCTIONS—BURDEN OF PROOF—SELF-DEFENSE. In a trial for murder, where accused pleaded self-defense, and submitted sufficient evidence thereon to require the submission of that issue to the jury, the court instructed that if the prosecution by the introduction of its evidence had proved the commission of the homicide by defendant beyond a reasonable doubt, and if the proof by the prosecution did not tend to show that the homicide amounted only to manslaughter, or that the defendant was justifiable in committing it, then the burden of proving justification for the homicide devolves upon the defendant—"that is, he must establish such justification by preponderance or the greater weight of the evidence"—and that, if the jury upon considering the entire evidence had a reasonable doubt of the guilt of defendant, they should acquit him. Comp. Laws 1907, sec. 4856, devolves the burden of proving circumstances of mitigation or justification on the accused, but only requires him to create a reasonable doubt as to whether the homicide was justifiable. *Held*, that as the part of the instruction following the phrase "preponderance of the evidence" defined and limited it so that the jury could not have been misled, as to the quantum of proof necessary to entitle accused to an acquittal, the charge, considered as a whole, was not prejudicial. (Page 183.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Nicholas Vacos was convicted of murder in the second degree and he appeals.

---

[2] People v. Tidwell, 4 Utah, 506, 12 Pac. 61; People v. Dillon, 8 Utah, 92, 30 Pac. 150; People v. Kessler, 13 Utah, 69, 44 Pac. 97.

AFFIRMED.

*S. A. King* and *C. R. Hollingsworth,* for appellant.

*A. R. Barnes,* Attorney-General, for the State.

FRICK, C. J.

Appellant was charged with the crime of murder in the first degree in the district court of Weber County, Utah, and upon a trial was convicted of murder in the second degree. He was sentenced to serve a term of thirty-three years at hard labor in the Utah state prison.

From the judgment aforesaid appellant prosecutes this appeal, and has assigned a very large number of errors. The record of the proceeding is a large one, covering over 1600 pages. It is therefore not practicable, and it is not deemed necessary in this case, to make a connected statement of the facts, nor to set forth in detail the numerous assignments of error. We shall state the facts which are deemed necessary to a correct understanding of the decision in connection with the points decided, and shall discuss only such errors as are deemed meritorious.

The first assignment relates to the refusal of the district court of Weber County to grant appellant's motion for a change of venue on account of local feeling and prejudice against him. We have carefully considered the affidavits and evidence produced both for and against the application for a change of venue, and from such consideration we are forced to the conclusion that the motion was properly denied. In the very recent case of *State v. Riley,* 41 Utah, —, 126 Pac. 294, not yet officially reported, the law in this jurisdiction governing the subject of a change of venue is fully discussed by Mr. Justice McCarty, and we are content with what is there said, and refer the reader to that decision for the law applicable to this case. We remark in passing, however, that the facts relied on in this case are, if anything, weaker than were those in the Riley Case, *supra,* and that in this case the facts relied on are fully met by the

counter affidavits filed in behalf of the state which was not done in the Riley Case. In view of the foregoing, and upon the authority of the Riley Case, this assignment of error cannot prevail.

It is also contended that the trial court erred in refusing to call another judge to try the case because the trial judge was disqualified by reason of his bias and prejudice against the appellant. Appellant's counsel contend that the alleged bias and prejudice is made manifest from the following proceeding, namely:

After the information charging appellant with murder in the first degree had been filed, and before he was arraigned, his attorney, the district attorney, county attorney, and sheriff of Weber County, and the chief of detectives of Ogden City where the alleged murder was committed, held a conference, in which, after a careful investigation of all the facts, said attorneys and officers concluded that appellant had committed murder in the second degree, and that, if he would plead guilty of the crime of murder in the second degree, the prosecuting attorney and the officers aforesaid would recommend that the court impose a sentence of not exceeding twenty-five years in the state prison. With this understanding the appellant, upon being arraigned, entered a plea of guilty of murder in the second degree. When the matter of the punishment agreed upon as aforesaid was brought to the attention of the trial judge, he refused to concur with the prosecuting attorney and the officers aforesaid. In passing upon the matter, the judge, among other things, said that he was "left with the bald charge and the bald plea to it, which is that the defendant is guilty of maliciously taking the life of another human being, though without premeditation. Viewing the matter in that light, gentlemen, and casting aside all other things, I do not feel that I can conscientiously sit here in my judicial capacity, and accept the recommendations which have been made by the state's attorneys. I do not feel that the malicious killing of a human being would justify me in sentencing a man to imprisonment for such a period as twenty-five years.

It seems to me that that is not an adequate punishment."
Counsel for appellant insist that from the language used by
the trial judge, as indicated, it is manifest that he had a
"deep-seated prejudice and bias against" the defendant, which
disqualified the judge from giving appellant a fair and im-
partial hearing. We cannot agree with this contention. We
have carefully examined the record of the proceedings for
some evidence which would substantiate counsel, but have
been unable to find any. It is true that counsel complain
of some of the court's rulings and instructions, but, even
though it were conceded that the court erred with regard to
some of them, yet there is nothing disclosed from which
any fair-minded men could say that the errors, if any, were
more than errors of judgment with respect to the law. But,
as we shall more fully point out hereafter, the rulings com-
plained of were proper and fair, and the instructions, with
possibly one exception, were certainly as favorable to the
appellant as he could ask. Nor does the language used by
the judge, even when considered by itself, necessarily indi-
cate prejudice or bias against the appellant. An admission
that the homicide in question was malicious was included in
the plea of murder in the second degree, just as the judge
states in his remarks, for the reason that, unless the killing
was malicious, appellant could not have been guilty of sec-
ond-degree murder to which he had pleaded guilty. It per-
haps would have been as well, if not better, if the trial
court had followed the recommendations of the prosecuting
attorney and other officers in view that they had made a
thorough examination of all the facts and circumstances sur-
rounding the homicide. The judge was, however, not re-
quired to do so. Nor was he required to decline the recom-
mendation without giving his reasons for doing so. This is,
in fact, all he did; and the mere fact that upon a consider-
ation of the whole evidence the jury were satisfied that the
appellant was guilty only of the degree of murder to which
he had consented to plead guilty upon the condition before
stated affords no ground whatever upon which to base an
inference that the trial judge was prejudiced or biased against

the appellant. Indeed, the record, as we have seen, clearly shows that the judge exhibited no prejudice against appellant in anything that he said or did in the course of the trial.

Another assignment relates to the admission in evidence of an alleged statement or threat made by appellant on the night of, and shortly before, the homicide occurred. It appears from the statements of two witnesses that while they were passing along a certain street in Ogden City on the night of the homicide a short time before it occurred, at a point near the store or business place of the deceased, in which the homicide took place, they saw the defendant and heard him talking with two men whom the witnesses did not know; that in passing as aforesaid the witnesses heard the appellant say to the two men, "I will get him to-night." The witnesses did not know whom the appellant was talking about, nor to whom he was referring in making the statement referred to. Appellant's counsel insist that it was error to admit the foregoing statement because it was too general to authorize its admission as evidence against appellant. We remark that the record discloses without dispute that on the day of the homicide appellant was indebted to the deceased in the sum of $185, that in the forenoon of that day the deceased sued out a writ of attachment on the debt aforesaid against appellant, and, by virtue of such writ, had through the constable taken possession of appellant's fruit stand or business, and had dispossessed him thereof; that because of the proceedings aforesaid appellant was considerably excited; that he consulted a lawyer, and, after doing so, he told another witness that, if the deceased would not return appellant's property or business to him by the Monday following the Saturday on which the attachment was issued and the homicide occurred, he would kill the deceased. Appellant admits the conversation with this witness just referred to, but asserts that what he said to the witness was that "this kind of people ought to be killed," meaning people who would take possession of a debtor's business by means of an attachment as the deceased had done. There were also other statements testified to which had more or less bearing

upon appellant's state of mind and the feelings he entertained against the deceased growing out of his conduct in attaching and closing up appellant's place of business. We are of the opinion that, although the particular statement objected to was general, yet, in view of all the other evidence which was before the jury, it was, nevertheless, admissible as indicating appellant's state of mind. In view of all the facts and circumstances, it was for the jury to say to whom the deceased referred, and what, if any, weight should be given to the statement. General threats are frequently admitted as indicating malice or the state of mind of the one making them when not too remote. Sometimes such threats are admitted as part of the *res gestae*. The threat in this case, however, was admissible, because, under all the facts and circumstances, it was for the jury to say to whom appellant referred, and in our judgment it was properly admitted under the rule laid down in *Moore v. People,* 26 Colo. 213, 57 Pac. 857, *State v. Rosa,* 72 N. J. Law, 462, 62 Atl. 695, *State v. Cochran,* 147 Mo. 504, 49 S., W. 558, *Brooks v. Commonwealth,* 100 Ky. 194, 37 S. W. 1043, and *Hodge v. State,* 26 Fla. 11, 7 South. 593, in all of which cases threats even more general than the one in question were held properly admitted. It is directly held in all of the foregoing cases that, where statements or threats are made under circumstances like those in the case at bar, it is for the jury to say what, if any, weight should be given them. The court, therefore, committed no error in admitting the statement objected to.

The appellant also assigns error upon the ruling of the court in permitting witnesses for the state, over appellant's objections, to testify to the general reputation of the deceased as a peaceable, quiet, and law-abiding citizen. This testimony was given in rebuttal. Appellant's counsel contend that, inasmuch as the general reputation of the deceased in that regard had not been assailed by them, it was error to admit the evidence respecting his general reputation as a peaceable and law-abiding man. While it is true that no evidence touching the general reputation

of the deceased as a peaceable and law-abiding man had been produced, yet, appellant, in his own testimony, went into considerable detail with regard to specific acts and conduct of the deceased, from which the jury could draw no other inference than that, if appellant's statements were true, the deceased was a quarrelsome and dangerous man; that he would, without great provocation, inflict unnecessary injury upon those who would oppose him; and, further, that the deceased was in the habit of carrying about his person a revolver which appellant had seen him use in a threatening manner while engaged in altercations with others. Indeed, one cannot read appellant's testimony relating to the mental traits of the deceased without becoming convinced that the only purpose appellant could have had in view in making the statements was to impress the jury that the deceased was a man whose anger was easily aroused, that he was oppressive, and, when in anger, a violent and dangerous man. Under circumstances like those in the case at bar, the courts have frequently held that it is proper on rebuttal for the state to show that the deceased had the general reputation of being a quiet, peaceable, and law-abiding man. The rule in homicide cases is well and tersely stated in 6 Ency. Ev. 778, in the following words:

"The prosecution cannot show the deceased's peaceable character until it has been attacked by the defendant in some way, even when there is a doubt as to whether the killing was done in self-defense. When, however, evidence as to his violent or dangerous character has been introduced, it is competent to show in rebuttal that he was reputed to be peaceable and law-abiding. It is not necessary, however, that his character be attacked directly, but evidence as to his previous threats, his previous hostile conduct, or as to his attack upon the defendant at the time of the homicide has been held sufficient to warrant proof of his peaceable character."

The foregoing statement of the law is sustained, and applied by many decisions, and among others that could be cited upon this proposition we simply refer to the following: *Davis v. People,* 114 Ill. 95, 29 N. E. 192; *State v. Vaughan,* 22 Nev. 298, 39 Pac. 733; *Bowlus v. State,* 130 Ind. 227,

28 N. E. 1115. See, also, 21 Cyc. 908, where the prevailing rule is stated to be in accordance with the statement quoted from the Encyclopedia of Evidence, *supra.*

There are also a number of assignments relating to the admission and exclusion of evidence. Most of them are quite trivial, and none is of sufficient importance to merit special consideration. The rulings complained of are all sustainable upon elementary principles, but, even though it were conceded that the court had erred with regard to some of them, yet it is obviously manifest from the whole record that such error, if any, could not have prejudiced the appellant to any extent.

Nor are the assignments relating to the refusal of the court to charge the jury as requested by appellant tenable. We have very carefully examined the charge of the court, and with one exception, which we shall presently consider, the charge is clear, covers every possible phase of the evidence, and upon the whole is as favorable to the appellant as the law in homicide cases warrants.

We will now proceed to consider the last assignment, which, in our judgment, presents the only serious question in the case. Appellant at the trial interposed the plea of self-defense and submitted sufficient evidence in support thereof to require the court to submit that issue to the **4** jury. In submitting the issue, it is, however, contended by appellant's counsel that the court erred in its charge respecting the burden of proof. The court's charge in this respect was based upon our statute (Comp. Laws 1907, section 4856), which reads as follows:

"Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, shall devolve upon him, unless the proof on the part of the prosecution tends to show that the crime committed amounts only to manslaughter, or that the defendant was justifiable or excusable."

The instruction which is assailed is as follows:

40 Utah—12

"The court charges you that, upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving the circumstances in mitigation, or to justify or excuse him devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed amounts only to manslaughter, or that the defendant was justified. *The court therefore charges you that in this case that if you find that the prosecution, by the introduction of its evidence, has proved the commission of the homicide on the part of the defendant beyond a reasonable doubt, and if you further find that such proof on the part of the prosecution does not tend to show that the homicide amounts only to manslaughter, or that the defendant was justified in committing it, then the court charges you that the burden of proving justification for the homicide devolves upon the defendant—that is, he must establish such justification by a preponderance or the greater weight of the evidence*—but the court charges you that, when the proof is all in, the evidence being considered in its entirety, both that introduced by the state and that introduced by the defendant, the primary question is, 'Is the defendant guilty beyond a reasonable doubt?' the law being that when the jury have fully and fairly considered all the evidence, not only the incriminating evidence, if any, but also that bearing upon the defense of justification, if you have a reasonable doubt of the guilt of the defendant of the crime charged, or any crime included within the information, you should acquit him; otherwise not."

Appellant's exception is directed to the italicized portion of the instruction, and especially to the clause which reads as follows:

"That is, he must establish such justification by a preponderance or the greater weight of the evidence."

It is contended that the foregoing statement does not correctly reflect the law with regard to the *quantum* of proof necessary to entitle the accused to the full benefit of the defense of justification or excusable homicide. Stating the proposition in another form, counsel's contention amounts to

this: That in order to entitle one accused of murder to avail himself of the plea of justifiable or excusable homicide under the statute referred to, all that he is required to do is to produce evidence, which, when considered in connection with all the other evidence in the case, is sufficient to create a reasonable doubt in the minds of the jury of the guilt of the accused. It must be conceded that, in view of some of the earlier decisions of the Territorial Supreme Court of Utah, the question with regard to the *quantum* of proof that an accused must produce in order to avail himself of the plea of self-defense is not entirely free from doubt. For this reason, and because the question is one of grave importance, it should be permanently settled, if possible.

Referring to the Utah cases upon this question, we find that in an early case, namely, *People v. Tidwell,* 4 Utah, 506, 12 Pac. 61, it was in effect held by a divided court that, in order to make the defense of justifiable or excusable homicide available to the accused, he was required to establish such justification or excuse by a preponderance of the evidence. In a subsequent case—*People v. Dillon,* 8 Utah, 92, 30 Pac. 150—the rule announced in the majority opinion in the Tidwell Case was applied to the defense of insanity. In the latter case a strong dissenting opinion was, however, filed by Mr. Justice Blackburn. The question again arose in the case of *People v. Kessler,* 13 Utah, 69, 44 Pac. 97, where the accused interposed an alibi as a defense. Upon this defense the trial court charged the jury that the burden of establishing it was cast on the defendant, and that he was required to establish it by a preponderance or the greater weight of the evidence. It was contended by the defendant in that case that the charge was erroneous because it cast upon him a greater burden than the law required. The same justice who wrote the opinions in the Tidwell and Dillon Cases also wrote the opinion in the Kessler Case. After setting forth the instruction that was complained of, it is said:

"The portion of the charge referred to announced, in substance, that, if the plaintiff's evidence established the defendant guilty beyond a reasonable doubt, the burden was upon the defendant to prove, by a preponderance of the evidence, that he was at another place at the time of the commission of the crime. The jury were informed by the court that they should consider all the evidence, including that as to the alibi; and if, from it all, they had a reasonable doubt of defendant's guilt, they should acquit him."

In view, therefore, that the trial court had told the jury that if, upon a consideration of the whole evidence, they entertained a reasonable doubt of the defendant's guilt they should acquit him, the Territorial Supreme Court held that the charge was not erroneous.

If the Kessler Case stood alone, one might well conclude that the Territorial Supreme Court had intended to follow the rule that one accused of murder, in order to avail himself of the defense of justification or excuse, is required to do no more at the trial than to produce evidence sufficient to create a reasonable doubt in the minds of the jurors as to whether the homicide was justifiable or excusable or not. If he did so, his guilt was not established beyond a reasonable doubt, and, this being so, he is entitled to an acquittal. Upon the other hand, if the Kessler Case is considered in connection with what is said in the preceding Tidwell Case, then, to say the least, the question as to the quantum of proof that one accused of murder must produce in order to avail himself of the defense of justifiable or excusable homicide is left somewhat doubtful and uncertain. This doubt and uncertainty is clearly reflected in the very instruction that we are now considering as well as in others that have reached this court upon the same subject. In California practically the same condition prevailed under the earlier decisions of the Supreme Court of that state. Section 4856, *supra,* is an exact copy of section 1105 of the Penal Code of California. In construing that section, the Supreme Court of California in the cases of *People v. Hong Ah Duck,* 61 Cal. 387, and *People v. Raten,* 63 Cal. 421, and perhaps some others, had held that one accused of murder who de-

sires to avail himself of the defense of justifiable or excusable homicide must establish such defense by a preponderance of the evidence. This was the law until the case of *People v. Bushton,* 80 Cal. 160, 22 Pac. 127, 549, was decided. In that case it was held that in the earlier California cases to which we have referred section 1105 of the Penal Code of California from which section 4856, *supra,* was evidently copied had been improperly construed. It was accordingly held that in a case of murder where justification or excuse is claimed it constitutes reversible error to charge that the defendant is required to establish such justification or excuse by a preponderance of the evidence. Upon the contrary, it was held that all that he is required to do under such circumstances is to produce sufficient evidence which when considered in connection with all the other evidence in the case will create in the minds of the jury a reasonable doubt as to whether the homicide was justifiable or not. In other words, if the jury, upon the whole evidence, including that of justification, entertain a reasonable doubt respecting the defendant's guilt, he is entitled to an acquittal. Since the decision of the Bushton Case, *supra,* the Supreme Court of California has, in numerous cases, held to the rule laid down in that case, as appears from the following cases: *People v. Elliott,* 80 Cal. 304, 305, 22 Pac. 207; *People v. Boling,* 83 Cal. 380, 23 Pac. 421; *People v. Hawes,* 98 Cal. 653, 33 Pac. 791; *People v. Neary,* 104 Cal. 373-378, 37 Pac. 943; *People v. Anderson,* 105 Cal. 32, 38 Pac. 513; *People v. Grill,* 151 Cal. 592, 91 Pac. 515.

It seems to us that the later California decisions conform to both reason and logic. It certainly must follow, as a logical, if not a self-evident, conclusion, that, if there exists a reasonable doubt in any case whether the accused was justified or excusable in committing a homicide, then there exists a reasonable doubt as to his guilt. It must also be conceded that such a doubt may arise from evidence which falls far short of establishing the justification or excuse by a preponderance of the evidence upon the subject. While, as we have already said, the courts are not in harmony upon

this question, yet we think the great weight of modern authority is in support of the rule adopted by the later California cases. The general rule is, we think, clearly and tersely stated in 25 A. & E. Ency. L. (2d Ed.) 283, in the following language:

"In discussing the question of burden of proof and reasonable doubt in cases involving self-defense, the courts have stated various confusing and apparently contradictory propositions, but the general rule deducible from the authorities seems to be that, when the prosecution has made a *prima facie* case against the accused, it is for him to introduce evidence showing self-defense if he sets up that plea; but that if, upon the whole testimony, both on the part of the state and the accused, the jury has a reasonable doubt whether he acted in self-defense or not, he is entitled to the benefit of the doubt and to an acquittal."

A large number of cases are there cited to which we refer the reader.

We are clearly of the opinion, therefore, that in any case coming within the purview of section 4856 the duty or burden is cast upon the defendant to produce or bring forward the evidence in support of justification or excuse, but he is not required to establish the justification or excuse by a preponderance of the evidence before he is entitled to avail himself of that defense. All that he is required to do is to produce sufficient evidence of justification or excuse which, when considered with all the other evidence in the case, will create a reasonable doubt in the minds of the jurors whether the homicide in question was justified or excusable or not. In other words, if, upon a consideration of all the evidence in the case, including that offered in justification or excuse, the jurors entertain a reasonable doubt of the guilt of the accused, he is entitled to a verdict of acquittal at their hands.

The question that confronts us, therefore, is, Did the court commit prejudicial error in charging the jury as appears from the italicized portion of the instruction we have copied herein in full? If it had not been for that portion of the instruction in which the court told the jury that appellant "must establish such justification by the prepon-

derance or greater weight of the evidence," we think
the charge, taken as a whole, would be without objec-
tion. Is it vulnerable to the objection with that portion left
in when all of the language contained in the instruction is
considered? We think not. While it is true that words and
phrases must ordinarily be given their ordinary meaning
and effect, yet when, as in this case, the judge has the power
to define and determine the meaning that the language used
by him shall receive, and he clearly states the meaning that
the jury is to give to certain language used by him, then
the ordinary rule referred to does not apply. If we take the
language used in the instruction in question and the con-
struction that the trial court placed upon it, we think it is
clear that the jury could not have been misled by what the
judge said. While the court told the jury that appellant
was required to establish justification by the preponderance
or greater weight of the evidence, yet he in the same sentence
also said what was intended by the phrase "preponderance
or greater weight of the evidence." The jury were told
that all that was meant by that phrase was that, if the evi-
dence created a reasonable doubt in their minds of the guilt
of appellant, they should acquit him. While no doubt it
would have been better if the court had entirely omitted the
statement that the appellant was required to establish justi-
fication by the preponderance or greater weight of the evi-
dence, yet, when that statement was so clearly defined and
limited by that which immediately followed it, we are firmly
convinced that the appellant was not prejudiced by what
the court had said. Such, we think, is also clearly the logic
of the later California cases which we have cited, and in
some of which it was contended, as it is here, that because
of some expressions used by the trial court in some of the
instructions, and in merely copying section 4856 by the
courts in some of the cases, a burden not required by law was
cast upon the accused. The Supreme Court of California,
however, held that when it clearly appeared from the whole
charge that the court had informed the jury that if upon a
consideration of the whole evidence, including that offered in

support of justification, they entertained a reasonable doubt of the guilt of the accused they must acquit him, he could not be heard to complain. The Supreme Court of Massachusetts in passing upon a similar question involving an instruction in *Commonwealth v. Cchoate,* 105 Mass. 459, arrived at the conclusion that in view that the trial court had modified a charge, as was done in the case at bar, the accused had no reason for complaint. We are also of the opinion that if the entire language which the court used in the Kessler Case, *supra,* is given effect, then it is an authority sustaining the proposition we contend for in this case, namely, that, although the court may by a certain expression have placed too great a burden upon the defendant, yet, if it is manifest that the court limited the meaning of such expressions, and upon the whole charge it is clearly manifest that the jury could not have been misled, then the error, if there were any, is without prejudice. If such is not the effect of that decision, it is meaningless.

We desire to state in conclusion that, while there was some evidence produced by the appellant which required the court to submit the question of self-defense to the jury, yet, upon the whole record, and especially when appellant's conduct immediately before and immediately after the homicide is considered in connection with his statements which are either admitted or not denied, conscientious men acting under their oaths could not well have arrived at any other conclusion than that appellant is guilty at least of murder in the second degree.

The appellant was ably defended, and has had a fair and impartial trial, and, after a careful examination of the whole record, we are satisfied that the proceedings are free from any substantial or prejudicial error. The judgment, therefore, is affirmed.

McCARTY and STRAUP, JJ., concur.