## MARION MENDENHALL v. STATE.

No. A-3541—Opinion Filed Jan. 28, 1921. Rehearing Denied March 8, 1921.

(196 Pac. 736.)

(Syllabus.)

1. **HOMICIDE — Defendant's Threats — Admissibility.** Where the plaintiff in error stands charged with the crime of murder, and at the trial, for the purpose of determining the state of his feelings towards the deceased at the time of the homicide, the state, over the objection of the plaintiff in error, introduces in evidence a declaration in the nature of a threat made by him to a third person, a short time prior to the homicide, where the name of the person against whom the threat is made is not mentioned, but the threat seems to have been directed against the deceased, as indicated by the gesture or motion of the head of the accused at the time of making such threats, it is a proper question for the jury to determine whether such threat was in fact made, and whether it was intended to apply to the deceased, after being admonished by the court not to consider it at all of they were not convinced beyond a reasonabe doubt that the threat, if made, was directed towards the deceased.

2. **EVIDENCE—Presumption of Regularity—Record of Evidence and Proceedings.** Where the testimony of a witness taken at a preliminary hearing is reduced to writing, and the record shows that the plaintiff in error was present at such hearing, and the witness was cross-examined by the attorney for the plaintiff in error, the presumption arises that such testimony was properly reduced to writing and signed by the witness and filed with the

clerk, and thus became a part of the records in the case of which the court will take judicial notice. Every presumption must be indulged in in favor of the regularity of the proceedings of a court of record. and the burden is upon the party who would impeach that regularity to do so by the best evidence obtainable.

3. **HOMICIDE — Instructions on Self-defense.** The instructions of the court relating to the law of self-defense examined. and held sufficient.

4. **TRIAL—Requested Instruction Covered by Charge.** A requested and refused instruction offered by plaintiff in error. with reference to which of the parties was the aggressor in the difficulty, examined, and held sufficiently covered by the instructions given.

*Appeal from District Court, Leflore County;*

*W. H. Brown, Judge.*

Marion Mendenhall was convicted of manslaughter in the first degree, and sentenced to serve a term of 21 years in the state penitentiary, and he appeals. Affirmed.

*Tom W. Neal* and *R. P. White,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *E. L. Fulton,* Asst. Atty. Gen., for the State.

BESSEY, J. In this case the plaintiff in error, Marion Mendenhall, was charged with the crime of murdering Alexander Nowlin, alleged to have been committed in Howe, Le Flore county, Okla., on the 30th day of March, 1918. At the trial, in due course, a verdict of manslaughter in the first degree was rendered against plaintiff in error, and judgment and sentence were entered accordingly, on the 29th day of November, 1918, fixing his punishment at confinement in the penitentiary for 21 years. In due time a motion for a new trial was filed, covering practically the same grounds complained of in this proceeding, which motion was by the trial court

overruled and exceptions taken and allowed, and an appeal taken to this court.

The homicide was admitted by the plaintiff in error, and his defense to the charge of murder was that he was justified in killing deceased in his necessary self-defense.

Without setting out the testimony of the witnesses in detail, it appears from the testimony introduced by both the state and the defense that prior to the time of the killing there had been some ill-feeling between plaintiff in error and the deceased, growing out of the fact that the children of the deceased had annoyed plaintiff in error by playing on the sidewalk next to his place of business, which was just across the street from the place of residence of the deceased; that about 6 o'clock in the evening on March 30, 1918, plaintiff in error left his jewelry store, locked the front door, and went to a grocery store near by and made some purchases of merchandise, the packages of which he carried in his arm, and that after he passed back towards his jewelry store he was met on the sidewalk by the deceased and John Kindle, a brother-in-law of the deceased, and that something was there said by the deceased about his children annoying the plaintiff in error; that immediately the plaintiff in error and the deceased began striking at and sparring with one another, and that they presently took hold of one another and clinched, and, after struggling some little time, plaintiff in error drew a pistol out of one of his hip pockets and fired three times, one of which shots killed the deceased.

As to whether the brother-in-law of the deceased, John Kindle, took any part in the affray the evidence

is conflicting. There is some testimony to the effect that the deceased had a pocketknife which he was attempting to use, but upon that point the evidence is conflicting and far from convincing.

Numerous errors are set out in the petition in error, but plaintiff in error urges but six in his brief and argument filed herein, namely:

(1) That the court erred in permitting witness George Nowlin, Jr., to testify concerning a certain alleged threat made by the plaintiff in error directed towards the deceased or some other person, a short time prior to the difficulty.

(2) That the court erred in giving to the jury certain oral instructions, over the objection of the plaintiff in error, relating to the testimony of George Nowlin, Jr., concerning the alleged threat.

(3) That the court erred in admitting the testimony of Tine Blassingame, taken before the examining magistrate at the preliminary hearing of this cause, for the reason that no proper predicate or foundation was laid for the introduction of such testimony.

(4) That the court erred in giving instruction No. 14, for the reason that no proper declaration of the right of self-defense is contained therein.

(5) That the court erred in giving instructions Nos. 18, 21, 22, and 23, because said instructions did not properly state the law of self-defense.

(6) Error of the court in refusing to give instruction No. 1, requested by the plaintiff in error, relating to which of the parties was the aggressor or which of the parties provoked the difficulty.

Analyzing the first assignment of error mentioned above, relating to the alleged threat against the deceased, made by the plaintiff in error to George Barlow, the testimony complained of is as follows:

"Q. Was Barlow there? A. Barlow and Mr. Mendenhall was standing on the corner of the porch.

"Q. Corner of whose porch? A. Barlow's.

"Q. Where were you? A. I was setting right there by the side of the porch, in a car.

"Q. Whose car? A. Barlow's.

"Q. Anybody there with you except your little brother? A. No, sir.

"Q. Did you hear a conversation there between the defendant, Marion Mendenhall, and Barlow, with reference to your father, at that time? A. Yes, sir.

"Q. You may tell the jury what it was. A. I was setting there in the car, and I overheard them talking, Mr. Mendenhall say, 'The God damned son of a bitch just as well go trailing up—just as well go back-trail himself or I'm going to kill him,' and Mr. Barlow punched him with his elbow, and he was nodding his head towards our building, and when he seen me, Mr. Barlow turned and walked into the store, and Mr. Mendenhall walked into his jewelry shop."

Plaintiff in error asked that this testimony be stricken, which was by the court refused. The court permitted this testimony to go to the jury, after instructing the jury as follows:

"Unless you are satisfied beyond a reasonable doubt that that conversation, if there was a conversation, was directed towards the deceased, you will not consider it for any purpose whatever. Of course, if you do believe beyond a reasonable doubt that it was directed against the

deceased, and that there was such a conversation, you will consider that along with all the other evidence in the case; otherwise, you will disregard it wholly." .

A threat to kill or injure another, not definitely designated or named, is admissible if there are other facts adduced indicating the person referred to in such threats. 21 Cyc. 922; *State v. Vacos,* 40 Utah, 169, 120 Pac. 497; *Brooks v. Commonwealth,* 100 Ky. 194, 37 S. W. 1043.

If threats were made by the plaintiff in error against the deceased shortly before the tragedy, evidence of such threats was properly submitted to the jury, for the purpose of determining the state of mind and the feelings of plaintiff in error toward the deceased at the time of the homicide, and where the person against whom such threat is meant to apply is indicated by some gesture or motion of the head, it is for the jury to determine, under the direction of the court, whether such threats were in fact made, and, if made, whether they were directed towards the deceased. The jury was admonished by the court that if they found that such threats were not directed towards the deceased the evidence should not be considered for any purpose whatever. *McDaniel v. State,* 8 Okla. Cr. 209, 127 Pac. 358.

In our opinion there was no error in permitting this evidence to go to the jury, and there was no error on the part of the court in indicating to the jury the only purpose for which it should be considered.

The next error complained of is that the court permitted the testimony of Tine Blassingame, given at the preliminary hearing, to go to the jury without a sufficient predicate having been laid for its introduction, and

for the reason that the defendant was deprived of his constitutional right of being confronted with this witness. The record shows that witness Tine Blassingame, at the time of the trial, was absent from the state of Oklahoma, in naval service at Goat Island, Cal. The record does not affirmatively show that this and other testimony taken at the preliminary hearing was filed with the court clerk, in this cause, but there is a presumption of law that the officers of the court did their duty, as the law directs, and that the proceedings at the preliminary trial were examined by the court and found regular, and that the record of the testimony of this witness filed with the court clerk became a part of the records in this case, of which the trial court took judicial notice. There was no denial that this was the testimony of this witness before the examining magistrate, or that the same was not properly authenticated and filed. There is a presumption that the plaintiff in error was present at the preliminary hearing and the record shows that this witness was subjected to a rigid cross-examination by the attorney for plaintiff in error.

Every presumption must be indulged in in favor of the regularity of the proceedings of a court of record, and the burden is upon the party who would impeach that regularity to do so by the best evidence obtainable. *Johnson v. State,* 1 Okla. Cr. 321, 97 Pac. 1059, 18 Ann. Cas. 300: 10 R. C. L. 882; *Wines v. State,* 7 Okla. Cr. 456, 124 Pac. 466.

Applying the above rule, the presumption is that there was a preliminary hearing; that the plaintiff in error was present; that the testimony was reduced to writing, signed and filed with the clerk, and was properly

a part of the records of the case. Otherwise, the court would not have permitted this testimony to go to the jury.

The testimony of a witness, taken before an examining magistrate in the presence of the defendant and his counsel, where it is shown that the witness has since gone beyond the jurisdiction of the court and cannot be reached by its processes, may be admitted as evidence against the defendant upon his trial, and the admission of such testimony does not infringe upon the constitutional right of the defendant to be confronted with the witnesses against him. *Mendenhall v. State*, 6 Okla. Cr. 436, 119 Pac. 594: *Fitzsimmons v. State*, 14 Okla. Cr. 80, 166 Pac. 453; *Davis v. State*, 15 Okla. Cr. 386, 177 Pac. 621.

We will next consider the objections of plaintiff in error to instructions numbered 14, 18, 21, 22, and 23, on the alleged ground that interpreted separately, and as a whole they do not correctly state the law of self-defense. These may all be considered together, and the instructions complained of, in their order, are as follows:

(14)   If in this case you do not believe from the evidence beyond a reasonable doubt that the defendant is guilty of murder, as defined in these instructions, but you do believe from the evidence beyond a reasonable doubt that the defendant, in Le Flore county and state of Oklahoma, within three years next prior to the date of the filing of the information in this cause, did without authority of law and without a premeditated design to effect the death of Alexander Nowlin, while in a heat of passion caused by a provocation apparently sufficient to excite uncontrollable passion in the mind of the defendant such as would render him incapable of cool reflection, shoot and discharge leaden bullets into the body of him,

the said Alexander Nowlin, from a loaded pistol, and then and there and thereby inflicted wounds upon the body of the said Alexander Nowlin from the effect of which he died, then it will be your duty to acquit the defendant on the charge of murder and to find him guilty of the lesser degree of crime, to wit, manslaughter in the first degree.

(18) If a person is assaulted in such a way as to induce in him a reasonable belief that he is in danger of losing his life or suffering great bodily harm, he will be justified in defending himself, although the danger is not real, but only apparent. Such person will not be responsible criminally if he acts in self-defense from real and honest convictions as to the character of the danger induced by reasonable appearances, although he may be mistaken as to the extent of the actual danger. A person need not be in actual imminent peril of his life or of great bodily harm before he may slay his assailant. It is sufficient if in good faith he has reason to believe from all the facts and circumstances as they appeared to him at the time that he is in such imminent peril.

(21) You are further instructed that if you have a reasonable doubt as to whether or not the defendant at the time of the shooting acted in good faith and upon reasonable appearance of danger of then losing his life or receiving great bodily harm at the hands of the deceased and John Kindle, or either of them, then it will be your duty to acquit this defendant, unless you further find from the evidence beyond a reasonable doubt that the defendant provoked the difficulty, within the meaning of this term as hereinafter defined and explained.

(22) If a person armed with a deadly weapon intentionally provokes a difficulty with another for the purpose and with the intent to take his life or to do him great bodily harm, and in the difficulty he kills his adversary, he cannot claim self-defense, it matters not

to what extremity he may be reduced in the conflict, and such killing would be murder.

(23)   You are further instructed in this connection that before a defendant in a homicide case can be deprived of the right of self-defense by reason of having provoked the difficulty, the jury must believe from the evidence beyond a reasonable doubt that the defendant provoked the difficulty for the purpose and with the intent upon his part to take the life of the deceased, or to do him great bodily harm, and that the defendant provoked the difficulty by an unlawful overt act of aggression on his part, or by an unlawful act or word.

Plaintiff in error contends that the fourteenth instruction should have contained a modified declaration on self-defense. As to this we do not agree. We think that this instruction, in connection with instruction No. 17, as applied to the facts in the case, fairly informed the jury under what circumstances the verdict might be reduced from murder to manslaughter in the first degree. Justifiable homicide was fairly stated in instruction No. 17 as follows:

"A homicide is justifiable when committed by any person in either of the following cases:

"(a)   When resisting any attempt to murder such person, or to commit any felony upon him or her, or upon or in any dwelling house in which such person is; or

(b)   When committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant, when there is reasonable grounds to apprehend a design to commit a felony or to do some great personal injury and imminent danger of such design being accomplished."

It is earnestly contended in the brief of plaintiff in error that the opening sentence of instruction No. 18,

"if a person is assaulted in such a way as to induce in him a reasonable belief that he is in danger of losing his life or suffering great bodily harm, he will be justified in defending himself, although the danger is not real but only apparent," so qualifies all of the other instructions complained of as to make it appear to the jury that the defense of self-defense could not be invoked by the plaintiff in error until after he had been first assaulted by the deceased.

Instructions in all cases should be given for the purpose of guiding the jury as to the law applicable to the facts adduced in testimony, and the testimony in this case was such that the jury might have believed from the evidence that the deceased first assaulted the plaintiff in error; on the other hand, the testimony might have warranted the jury in the belief that the plaintiff in error first assaulted the deceased; or that it began as a mutual altercation. *New v. Territory,* 12 Okla. 172, 70 Pac. 198.

In analyzing this instruction we must bear in mind the distinction between an assault and an assault and battery. An assault has been defined as:

"A demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present."

Another definition is that—

"An assault is an attempt to commit a battery, coupled with a present ability to do so." 2 R. C. L. 525.

We think that under the circumstances there was no error on the part of the court in the use of the language contained in the opening sentence of instruction No. 18, but if by any chance the language so used was

susceptible of a prejudicial construction, it was fully corrected by the other instructions given, as above set out.

Plaintiff in error insists that instruction No. 1, offered by his attorney and refused by the court, should have been given, as follows:

"You are instructed that in determining who is the aggressor in the case you must consider all the facts and circumstances surrounding the difficulty and occurring at the time of the fatal affray, and the fact that either the defendant or the deceased at the time of the difficulty struck the first blow might not, of itself, constitute the striker the aggressor, but such fact should be considered by you, together with the surrounding facts and circumstances, in determining who in fact was the aggressor."

We find no error in the refusal to give this instruction, for the reason that the law as therein stated was fully covered by the instructions given.

The judgment of the trial court is therefore affirmed.

DOYLE, P. J., and MATSON, J., concur.