### C. I. SHERMAN v. STATE.

No. A.-3595.   Opinion Filed Dec. 20, 1921.
(202 Pac. 521.)

(Syllabus.)

1. **Trial—Instructions Germane to Evidence.** The instructions given should be germane to the evidence introduced, eliminating abstract questions of law not raised by the evidence.

2. **Homicide—Instruction on Manslaughter Warranted Where Evidence Conflicts as to Motive and Aggression.** Where the accused is charged with murder and the evidence indicative of motive, aggression, and provoking the difficulty, on the part of the accused as well as on the part of the deceased, is conflicting, an instruction on the law of  manslaughter in the first degree is proper.

3. **Homicide—Instructions—"Serious Bodily Harm" and "Great Bodily Injury" Used Interchangeably.** The use of the expressions "serious bodily harm" and "great bodily injury" interchangeably in the several instructions given held not error.

4. **Homicide—Right To Instruction on Strength, Weight and Physical Condition of Parties.** Where no issue of law is involved, the accused cannot, as a matter of right, demand an instruction that the jury may take into consideration the relative strength, weight, and physical condition of the deceased and the defendant at the time of the homicide. This the jury may do as a matter of course. It was, however, a question of fact and not of law, under the circumstances here.

5. **Trial—Instructions on Weight of Evidence.** Trial courts should abstain from giving instructions that might be construed as a comment upon the weight or importance of any particular evidence.

6. **Evidence—Res Gestae—Self-Serving Declaration.** A self-serving declaration made by the defendant some minutes after the homicide in the presence of a police officer who had come to arrest the defendant, was not a part of the res gestae, and the defendant's statement so made was properly excluded from the jury.

7. **Evidence—Exclusion of Card of Federal Officer Indicative of Defendant's Physical Disability Proper.** The exclusion of a card said to have been issued by some officer of the United States, indicative of physical disabilities of the defendant and his rejection for military service, was proper, where there was no showing when, by whom, or by what authority such card was issued, and no offer was made showing its contents or relevancy.

8. **Appeal and Error—Record—Errors not Predicated on Matters of Record.** Errors not predicated on matters appearing in the record are not properly before this court for consideration.

Appeal from District Court, Carter County; Thos. W. Champion, Judge.

C. I. Sherman was convicted of manslaughter in the first degree, and sentenced to four years in the state penitentiary, and he appeals. Affirmed.

Rutherford Brett, J. H. Mathers, and Chas. E. Moore, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall and E. L. Fulton, Asst. Attys. Gen., for the State.

BESSEY, J. The plaintiff in error, C. I. Sherman, designated herein as the defendant, by information filed in the district court of Carter county, was charged with murder by feloniously causing the death of Sam Dow on the 24th day of March, 1918, in the city of Ardmore. At the trial a verdict was rendered on February 7, 1919, finding the defendant guilty of manslaughter in the first degree and assessing his punishment at confinement in the state penitentiary for a period of four years. From the judgment rendered on the verdict the defendant appeals to this court.

The testimony shows that the defendant and the deceased, Sam Dow, and his wife for a long time prior to the homicide were close friends, and that the defendant, for a period of two years prior to the tragedy, was a traveling salesman, and when not out on the road made his home with the deceased and his wife at Ardmore; that the defendant returned from a business trip on Friday preceding the Sunday on which the homicide took place. There is testimony to the effect that: On Saturday night the deceased had been drinking heavily, and was much under the influence of liquor, and that the defendant remained with him, driving about town and visiting different places, for the purpose of getting him into condition to go home. That shortly after midnight they went to the Dow home, where Mrs. Dow was waiting for them; that presently the deceased suggested that they go back down town, and that the defendant refused to go. At that time a brother of the deceased was in bed in an upper room, and, hearing a noise or commotion downstairs, awoke. That the defendant and the deceased began to quarrel, and the wife of the deceased called

to the brother upstairs, who came down in response to the call.

As to what took place from this point thereafter the testimony of the wife of the deceased and the testimony of the brother are sharply in conflict. The testimony of the wife was to the effect: That the deceased was intoxicated and in a quarrelsome state of mind, and that when the defendant refused to return to town with him the deceased pulled the defendant off of the couch on which he was lying, and assaulted him with a piano stool; that she and the brother separated the two, and that the brother and the defendant started upstairs to retire, when the deceased again assaulted the defendant with the piano stool. The deceased dropped the piano stool, and threw his arm around the defendant's neck. That at this time the defendant had an opened traveling bag in his hand, and that the defendant reached into the bag and procured his pistol, and in the scuffle fired three shots at the deceased in rapid succession. One of the shots penetrated the neck of the deceased, causing almost instant death. The testimony of the brother of the deceased was to the effect that the defendant and the deceased were quarreling, and were grappling when he came downstairs; that he separated them, and told the defendant to go upstairs to bed, where he belonged; that, instead of doing so, the defendant went to his traveling bag and got out his pistol, and shot and killed his brother, the deceased, after the quarrel had ended, and while the deceased was making no effort to renew the assault.

The testimony shows that the deceased and his brother were large, strong men, in good health, and that the defendant was much smaller physically, and in poor health; that prior to this difficulty they had been the best of friends, and no ill feeling had existed between them. There is some testimony tending to show discrepancies between the testimony of the

wife of the deceased at the preliminary examination and the testimony given by her at the trial, the latter being more favorable to the defendant. The wife explains these discrepancies by stating that her testimony given at the preliminary hearing was given under fear and duress of her brother-in-law.

Numerous assignments of error are set out in the petition in error, but the defendant in his brief condenses these into four propositions, namely:

(1) That the evidence is insufficient to support or sustain the verdict.

(2) Erroneous instructions given by the court, and error of the court in refusing to give requested instructions.

(3) The exclusion of competent evidence.

(4) Prejudicial error arising out of misconduct of the county attorney.

It has been repeatedly held by this court that where there is any substantial evidence supporting a verdict this court will not inquire into a preponderance of the evidence and disturb a verdict of a jury because it might seem that the jury made a mistake in weighing the evidence or upon the consideration or credibility of witnesses. Had the jury believed the testimony of the defendant and the testimony of the wife of the deceased they would have been justified in rendering a verdict of acquittal on the ground of self-defense; on the other hand, if the jury disbelieved their testimony or material parts thereof, and did believe that the brother of the deceased testified truthfully, the verdict of the jury as rendered was justified.

The defendant complains that the instructions given by the court limited the jury's determination of the issues to three questions only: Was the defendant guilty of murder, and if not, was he guilty of manslaughter in the first degree,

or was the homicide justifiable on the ground of self-defense? The instructions given should always be such as will inform the jury of and elucidate the law applicable to the evidence introduced. Under the testimony here the jury were bound to find that the defendant was guilty of either murder or manslaughter in the first degree, or to acquit him on the ground of self-defense; and the instructions given were proper under the evidence adduced in this case. Mendenhall v. State, 18 Okla. Cr. 441, 196 Pac. 736; Thornsberry v. State, 8 Okla. Cr. 88, 126 Pac. 590.

Complaint is made that the court used the word "great" in several of the instructions, instead of the word "serious," in connection with the expression "serious bodily harm" or "serious personal injury," and that by stressing the word "great" in these instructions the court conveyed to the minds of the jurors that the defendant could not act in his own self-defense against "serious" bodily harm, merely. We think there is no merit to this contention; a reading of the instructions discloses that the words "great" and "serious" are used interchangeably, and that the instructions as a whole fairly state the right of the defendant to defend himself against actual or apparent bodily harm.

It is urged also that the court erred in refusing to in some manner instruct the jury in substance as stated in the concluding language of defendant's requested instruction No. 5, which was refused by the court, namely:

"You have the right, in this connection, to consider the relative strength, weight and physical condition of the deceased and the defendant at the time of the homicide."

There was no error in the failure of the court to give such a specific instruction. The testimony is undisputed that there was a marked difference between the strength, weight, and physical condition of the defendant and the deceased, and this

testimony raised an issue of fact for the jury, and was doubtless considered by them, along with all the other circumstances in the case. The court did instruct the jury fully and fairly upon the right of the defendant to defend himself against death or serious bodily harm, real or apparent, as appeared from the evidence. The accused, as a matter of right, may not demand an instruction touching upon every feature of the evidence in all of its details, not involving issues of law. Indeed, the court should abstain from giving an instruction that might be construed as a comment upon the weight or importance of any particular evidence. Roddie v. State, 19 Okla. Cr. 63, 198 Pac. 342.

It is next urged that the court erred in taking from the consideration of the jury the testimony of witness Segler, a deputy sheriff who arrested defendant, relating to the defendant's statement made in the presence of this witness a few minutes after the shooting. Defendant contends that this statement was a part of the res gestae, and that he was entitled to have it go to the jury as tending to show his state of mind at the time of the killing. This was a self-serving declaration made by the defendant some minutes after the homicide, after the brother of the deceased had telephoned to the officers and the witness had arrived at the scene of the tragedy, the time being variously fixed by different witnesses at from 5 to 15 minutes after the fatal shot was fired. The court, in the first instance permitted this testimony to go to the jury, but afterwards withdrew it and instructed the jury not to consider it. In our opinion, this was proper under the circumstances. There had been a sufficient cooling time after the tragedy, and to us it seems clear that this declaration was a self-serving declaration concerning a past and closed event, and no part of the res gestae. Pope v. State, 15 Okla. Cr. 162, 175 Pac. 727; Gransden v. State, 12 Okla. Cr. 417, 158 Pac. 157; 10 R. C. L. 979, and cases there cited.

It is also urged that the court erred in refusing to admit the evidence offered by the defendant of a card issued to him by some branch of the War Department, showing that he was physically incapacitated for military service. Prior to this offer the defendant had testified that he weighed about 125 pounds, that he was in poor health and had been sick with lung trouble, and that he had also suffered with rheumatism for a long period of time. There was no showing when this card was issued or by whom or by what authority it was issued, nor any offer showing its specific contents, or whether or not it was admissible or relevant, and no proper predicate was laid for its introduction. In any event, the testimony of the defendant himself, which was not refuted or denied, and the appearance of the defendant on the stand, in our opinion, was sufficient to apprise the jury of his real physical condition, and we hold that there was no prejudicial error in sustaining an objection to the introduction of this card.

In this connection, when objecting to the introduction of this card, the county attorney stated, "We are not prosecuting him for being a slacker." The defendant promptly objected to this statement in the presence of the jury, as being prejudicial and unfair to the defendant. The court sustained the objection, and admonished the jury to pay no attention to the side remarks of the attorneys, and informed the jury that such remarks constituted no part of the evidence in the case, and should not be considered by them. We think this remark of the county attorney was improper and ill-advised, and merited the mild rebuke given by the court. Since the court admonished the jury to pay no attention to it, and since the testimony preceding this incident tended to show that the defendant was not a slacker, we hold that under the circumstances the remark of the county attorney did not amount to prejudicial error.

Complaint is further made that the county attorney, in his closing argument to the jury, branded the defendant as a "murderer, a seducer, a defiler of home." The arguments of counsel in this case were not made a part of the record, and are not therefore before this court for consideration.

For the reasons stated in this opinion the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.