## JAKE WORKMAN v. STATE.

No. A-9237. July 9, 1937.
(70 Pac. 2d 133.)

J. R. Charlton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, P. J. The defendant in this case was charged by information with rape committed on the person of Lillie McCormick, a female not his wife, he being over 18 years of age and Lillie McCormick being under the age of 14.

The record discloses that on the 15th day of December, 1935, Lillie McCormick was living with the defendant, Jake Workman, and his wife, being related to them; that on said date the defendant took Lillie McCormick to Bartlesville for the avowed purpose of buying her some clothes; that the alleged rape took place on the road between the home of the defendant and the city of Bartlesville.

Lillie McCormick, testifying, stated that on the way to Bartlesville the defendant turned off the highway on a road that went through a gate; that the gate was closed and the defendant did not get out and open it; she also stated that she did not go inside the gate. Later in her testimony she states that the defendant turned off in a little old place and went about a half mile off the highway, and repeats they did not open the gate or go inside

the gate. Lillie McCormick states that the defendant removed the cushion from the back seat of his Ford car and angled it in the back seat, then took her out and put her in the back seat, her pants were removed, and that the defendant there had sexual intercourse with her. Her statement is not very clear as to the efforts made by the defendant to place the cushion in position. She further states they went on to town and defendant bought the clothes for prosecutrix they had gone to town to buy; they returned to defendant's home, she said nothing to any one as to what had taken place nor did she say anything to any one until after she had left the defendant's home. She spent some time at her father's home, not telling any one about it until after she had gone to the home of her aunt, the wife of Frank McCormick; it was more than 30 days from the date of the alleged offense before prosecutrix mentioned it to any one.

The testimony of the prosecutrix is indefinite and uncertain except as to the actual fact of sexual intercourse.

Dr. Wm. Le Blanc, testifying for the state, stated he examined Lillie McCormick; that Mrs. McCormick came with her to his office.

"From my examination of the little girl I believe she had had sexual intercourse or some foreign object had entered her vagina. There was no contusion or darkening of the surface or bruises."

Mrs. Pete McCormick, testifying for the state, stated the prosecutrix was 13 years old.

"About October last year I learned Lillie was staying at the home of the defendant, Jake Workman. She came to my house the 26th day of January, 1936; in handling her clothing I found some discharge on her pants; I mentioned it to Lillie and she mentioned the name

of Jake Workman in connection with it; she said Jake Workman used her; after that I took her to the doctor at Ochelata."

The foregoing is the substance of the testimony of the state as to the charge of rape against the defendant.

The defendant denied that he had in any way whatever mistreated the young girl or that he had attempted or had had intercourse with her. He admits taking her to town to buy some clothes for her, as his wife could not go; that they bought the clothes and came back home.

The wife of the defendant states that when her husband, the defendant, and Lillie McCormick, the prosecutrix, came back from Bartlesville, she examined the clothing they had bought for Lillie and she thought the clothing was too small for her. She took her into a bedroom adjoining the living room and put some of the clothing on her; she examined and washed the clothing of Lillie that she had taken off and there was no blood or anything unusual had happened.

The prosecutrix denies the statement of the wife of the defendant as to her being present in the bedroom when the clothes were changed, and stated that she went upstairs and changed her clothing without Mrs. Workman being present.

A witness by the name of Belding testified he was in the house at the time the discussion of the clothes came up between Mrs. Workman and Lillie, and that Mrs. Workman and the girl went into the bedroom and closed the door, and afterwards Lillie came out with some of the new clothes on.

Dr. John P. Torrey, testifying for the defendant, stated he was a physician; that he knew the defendant

Workman, and he knew the county attorney, Mr. Harris. That at the request of the county attorney he examined the defendant and found no evidence that the defendant was afflicted with any venereal disease, and nothing to show that he had ever been afflicted with a venereal disease.

Dr. Elizabeth Chamberlain, testifying, stated she was a practicing physician. At the request of Mr. Harris she made an examination of the prosecutrix, Lillie McCormick, who was brought to her by a woman who said she was an aunt of the child.

"I did not inquire as to her name. From my examination I found the parts were normally pale, no redness or swelling, no discharge at the time. I took the usual slides for microscopic examination, that is, the cotton covered applicator, I got what I could from these parts; there was scarcely nothing except a few normal cells on the slide and a few bacteria that one would expect to find, that is, the condition you would ordinarily find in a normal girl of that age; no discharge of any kind or matter was found from my examination. I examined the hymen and found there was a membrane present."

On cross-examination witness stated she could not tell from the examination whether the hymen had been partially or any way ruptured.

"It is possible that this girl may have had intercourse with some one last fall, November or December, and yet be in the condition I found her in April, 1936. It isn't probable if the act of sexual intercourse was completed that she would be in the condition she was in when I examined her, and especially if she had had two operations it would not be probable."

The defendant was convicted and sentenced to serve a term of 15 years' imprisonment in the state penitentiary. Motion for a new trial was filed, considered, overruled,

and the defendant appeals from the judgment and sentence of the trial court to this court by petition in error, with case-made attached.

Seven errors are assigned by the defendant as grounds for a reversal. The first assignment is:

"Said court erred in overruling the motion of plaintiff in error for a new trial."

All the other errors assigned are embraced within the motion for a new trial, and will be considered together, as the main argument of the defendant is that the testimony is insufficient to show that a crime has been committed.

It will be seen from the record that Mrs. Pete McCormick was not friendly with the defendant, and that after the prosecutrix left the Workman home she went home and stayed for a while with her father and stepmother, and then went from there to Mrs. McCormick's, where it is claimed the little girl told her what had happened. The defendant stated that the only thing he could assign for Mrs. McCormick wanting to give him any trouble was that he was working and making a living for his family, and that Pete McCormick had failed to get along as well as he had.

The testimony of Mrs. Workman showing there were no blood stains of any kind upon the clothing worn by the prosecutrix the day she made the trip to Bartlesville, and the further testimony of the prosecutrix that she made no outcry and said nothing about what had happened until the latter part of January, and until she had gone to Mrs. McCormick's, and the testimony of the doctors who examined the prosecutrix, which is not positive as to her having had sexual intercourse, casts a doubt on the statements of the prosecutrix that she had been raped, or had

had sexual intercourse with the defendant. The indefinite and uncertain statements of the prosecutrix as to where the alleged rape took place along the highway, or near the highway between the home of the defendant and Bartlesville, raises a reasonable question as to whether or not the evidence is sufficient to sustain a conviction and send a man to the penitentiary for 15 years, in view of the other testimony of reputable witnesses as to what took place after the defendant and the prosecutrix returned from the city of Bartlesville, and the condition of her clothing.

There is no testimony tending in any way whatever to corroborate the testimony of the prosecutrix. In this case the testimony of the prosecutrix should be considered in the light of all the attending circumstances; these are few and perhaps not very significant, but after a careful reading of the testimony we think the circumstances and the statements of the prosecutrix being so indefinite, uncertain, and unreasonable as to where and when the said rape took place, that they cast such doubt upon the credibility of her testimony that a conviction should not be permitted to stand. Her testimony is contradicted, and her subsequent conduct in not making a complaint as to what had taken place is wholly inconsistent with her direct testimony. When she returned home, Mr. Belding and the wife of the defendant noticed nothing unusual in her appearance or the condition of her clothing. It is true a conviction of rape must rest largely upon the testimony of the prosecutrix, and direct corroboration is well nigh impossible to procure. However, where the charge is true there will almost always be some corroboration, such as an injury to the person or clothing of the prosecutrix, or that she made complaint as soon as practicable and without unreasonable delay, and it is always

legitimate to consider prior and subsequent conduct of the prosecutrix as the usual and natural conduct of an outraged woman, as bearing upon the credibility of her testimony.

In Wines v. State, 7 Okla. Cr. 450, 124 Pac. 466, 470, this court said:

"It is the natural impulse of every honest and virtuous female to flee from threatened outrage, and if assaulted to make complaint at the first opportunity, and where this is not done, and no reasonable explanation is made, it is a strong, but not a conclusive, presumption against the truth of the accusation."

A charge of rape is one that arouses the passion and prejudice of the jurors, and for that reason it is the duty of the court to clearly scrutinize the evidence and where the evidence of the state is unreasonable, inconsistent, and contradictory, or indications are that the prosecution is maliciously inspired, the court should not permit a conviction to stand. A charge of rape is an accusation easy to be made, hard to prove, and harder to be defended by the accused, though ever so innocent. This court is not unmindful of the rule frequently announced by it that the weight of the evidence and credibility of the witness is for the jury, and the court will not reverse a conviction on conflicting evidence where there is substantial evidence supporting it. Witt v. State, 29 Okla. Cr. 357, 233 Pac. 788; Walker v. State, 20 Okla. Cr. 319, 202 Pac. 799; Sherman v. State, 20 Okla. Cr. 306, 202 Pac. 521; Ravenscraft v. State, 23 Okla. Cr. 361, 214 Pac. 946.

The foregoing rule is sound, as well as the rule that a conviction may be sustained by the uncorroborated statement of the prosecutrix. We have set out all the competent evidence disclosed by the record in this case show-

ing the contradictory and unreasonable features of the evidence. It is our opinion that the conviction should be set aside. The judgment of the district court of Washington county is therefore reversed.

DOYLE and BAREFOOT, JJ., concur.