## S. T. JAMES v. STATE.

No. A-2678.    Opinion Filed January 26, 1918.

(169 Pac. 1127.)

1. HOMICIDE—Instruction—Manslaughter in First Degree—Evidence. On a trial for murder, where the evidence, however slight, would warrant the jury in returning a verdict for manslaughter in the first degree, it is the duty of the trial court to instruct the jury on the law of manslaughter in the first degree.

2. SAME—Question for Jury. In a prosecution for murder, evidence considered, and held to justify the submission to the jury of the question whether the defendant was guilty of manslaughter in the first degree.

*Appeal from District Court, Wagoner County;*

*R. P. de Graffenried, Judge.*

S. T. James was convicted of manslaughter in the first degree, and he appeals. Affirmed.

*E. A. Summers, C. A. Summers, E. P. Rhea.* and *J. S. Dickey, Jr. (G. W. P. Browne,* of counsel), for plaintiff in error.

*S. P. Freeling*, Atty. Gen., and *R. McMillan*, Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, hereinafter called the defendant, was tried in the court below upon an information charging that in Wagoner county, on or about the 26th day of May, 1915, S. T. James, the defendant, did kill and murder one Lee Roberts, by shooting him with a pistol. The jury returned a verdict of manslaughter in the first degree, but failed to fix the punishment. By the judgment of the court he was sentenced to imprisonment in the penitentiary for the term of 12 years, and he has appealed from the judgment.

Counsel for the defendant contend that the evidence did not warrant a conviction for manslaughter in the first degree, and that this degree of homicide should not have been submitted to the jury for consideration.

The evidence shows that the deceased and the defendant were negroes; that Lee Roberts lived with his parents in the town of Tullahassee, and the defendant lived on a farm about two miles distant; that about daylight on the morning of the tragedy the defendant appeared at the home of the deceased and shot him three or four times; that death was instantaneous. The mother of the deceased testified that about dawn that morning the defendant entered their home and instantly fired several shots at her son, who was sitting on a chair putting on his shoes; that he was holding up his hands when the fatal shot was fired; that she said to the defendant, "What did you kill my baby for?" and he answered, "He insulted my wife." The father, sister, and brother-in-law of the deceased testified that there was no weapon in the room at the time. Dr. Minor testified that he heard

the shots and reached the place of the homicide within 20 minutes; that the body was lying on the floor; that one shot hit the elbow, one the shoulder, and the fatal shot was in the breast.

The defense sought to be made was that the killing was justifiable in self-defense. The defendant testified that he was born in Alabama about 50 years ago, and had lived in Oklahoma about four years; that he was a preacher and farmer, and for a short time was in the mercantile business at Tullahassee; that on the Saturday preceding the homicide the deceased asked him if he was going to Coweta, and he told deceased he was going there to preach the next day, and on the Wednesday morning following, about 3 o'clock, his wife told him that the deceased came to their room on Sunday morning and drew a revolver, and by force had intercourse with her; that he called his son into the room, and all three had a conversation as to what was best to do, and his son suggested that he would go and talk the matter over with Lee Roberts and have him leave the country, and he said, "No," that she was not his mother and he would go himself; that they hitched up a buggy, and when he started to get in his son said, "This man carries a pistol," and, "You had better go prepared"; that he got his pistol and drove to Tullahassee to see Lee Roberts and let him know that he must leave the country; that he called at the door and Lee Roberts told him to come in, and he went in and told Roberts he called to see him about his assault upon defendant's wife; that Roberts got up and grabbed a pistol from the table, and he shot Roberts through the arm, and kept on shooting him until he fell; that he shot him because he knew his own life was in

great danger. It appears that the defendant's wife was a young woman about 25 years of age.

The defendant's son, Turner Roberts, testified that he was 21 years old; that Lee Roberts was often about his father's place of business in Tullahassee; that he heard him ask his father's wife an unfair question, and heard him say that, "If she meant to tell her husband he would always be prepared, and if he beat him shooting it was all right"; that the pistol his father carried with him that morning was a 38 Colts automatic. R. L. Granger testified that he was agent at Tullahassee for the Missouri, Kansas & Texas Railroad, and that about 30 minutes after the shooting he was in the room where Lee Roberts' body was lying on the floor, and he thought he saw a pistol there on the table.

Several witnesses testified that they knew the general reputation of the defendant for peace and quiet, and that it was good. In rebuttal numerous witnesses testified that they were present in the room shortly after the killing occurred, and did not see any pistol there. Lucius Leathers testified that he was city marshal of Tullahassee, and the morning of the killing he heard the defendant remark that Lee Roberts had insulted his wife, and that she had told him all about it the night before, and he just went and killed him. Jack McCullough testified that he was deputy sheriff, and had known the defendant two or three years, and that on Monday morning before the killing he met him in the town of Porter and talked with him, and the defendant said that Lee Roberts came to his house in his absence and made an immoral talk to his wife and he had about made up his mind to kill him; that he told him the Bible says, "Thou shall not kill," and he said, "What God has joined together let no man put

asunder," and that the law would give him the right to protect his family; that Wednesday morning he got word by telephone of the killing, and started after the defendant, and met him driving along the road with his wife in the buggy. The defendant told him why he shot Lee Roberts, but did not say anything about Roberts having a pistol.

The court in the instructions given to the jury submitted the issue of murder, of manslaughter in the first degree, and the law of justifiable homicide in self-defense It does not appear from the record that any objection was made or exception reserved to any of the instructions given. Taking the evidence relied upon by the defendant to be true, we think that it was legally insufficient to show justification. Upon his own testimony the defendant was at least guilty of manslaughter in the first degree. This being so, the instructions, considered as a whole, were more favorable to the defendant than the law required. In a prosecution for murder the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests, and if the evidence tends to prove different degrees, the law on each degree which the evidence tends to prove should be submitted to the jury. It is true that the evidence tending to show that the crime committed was manslaughter in the first degree is very weak and unsatisfactory; however, the court was right in its submission of manslaughter in the first degree. In numerous cases this court has held that where the instructions in a homicide case submitting the lesser degrees of homicide are not objected to or exceptions saved thereto, the defendant is bound by them.

After a careful examination we find no prejudicial error in the record, and we are of the opinion that the defendant had a fair and impartial trial. The judgment of conviction is therefore affirmed.

ARMSTRONG and MATSON, JJ., concur.