TOM PANTHER v. STATE.

No. A-6527.   Opinion Filed May 4, 1929.
(277 Pac. 247.)

Saunders & Emerick and C. G. Pitman, for plaintiff in error.

Edwin Dabney, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiff in error, hereinafter called defendant, was convicted in the superior court of Pottawatomie county of the crime of rape in the first degree, and was sentenced to serve a term of fifteen years in the state penitentiary.

This conviction was for rape by force under the fourth subdivision of section 1834, C. O. S. 1921. The defendant was a married man 34 years old, full-blood Shawnee Indian living at Miami, Oklahoma, and the prosecutrix, Callie Clark, was an unmarried female, 19 years of age, and also a full-blood Indian.

The facts in the case are substantially that the defendant induced the prosecutrix to leave the stomp dance grounds where an Indian stomp dance was being held on the night of August 21, 1926, to go with defendant on an automobile ride. The prosecutrix claims that, after they reached a place a few miles from the stomp ground, that the defendant began to try to force the prosecutrix to have intercourse with him, that she jumped out of the car and ran, and that the defendant ran after her, and catching her, dragged her down under a bridge and dragged her from under the bridge into some weeds off in a field nearby and there committed rape upon her.

The story of the prosecutrix is amply supported by all the physical facts, including her torn and soiled clothing, her blackened eye and bruised face, and the appearance of the ground, weeds, and underbrush at the place where the assault took place. The prosecutrix is also corroborated by the testimony of one physician, who testified that, from an examination, some one had had intercourse with the prosecutrix, but the doctor could not tell how recently.

The first error complained of by the defendant is that the evidence is insufficient to support the verdict. It is a sufficient answer to this contention to say that the evidence of the state overwhelmingly supports the contention of the prosecutrix that the defendant raped her as alleged in the information. There is no merit in the con-

tention that the evidence is insufficient to support the verdict.

The defendant alleges as his second ground of error that the court erred in refusing upon the request of the defendant, to instruct, first, that the jury might find the defendant guilty of assault and battery; and, second, the court erred in refusing, upon the request of the defendant, to instruct the jury that they might find the defendant guilty of an assault with intent to commit rape. The defendant assigns the refusal of the court to give such instruction as a ground for reversal of this case.

In Anderson v. State, 8 Okla, Cr. 90, 126 Pac. 840, Ann. Cas. 1914C, 314, in paragraph 4 of the syllabus, this court says:

"The question of the sufficiency of the instructions and the action of the court in refusing to give special instructions requested must always be considered and determined by the facts of each case in which they arise."

In the case of Sherman v. State, 20 Okla. Cr. 306, 202 Pac. 521, paragraph 1 of the syllabus, this court said:

"The instructions given should be germane to the evidence introduced, eliminating abstract questions of law not raised by the evidence."

In the case at bar, the evidence on the part of the prosecutrix presents a case of rape in the first degree; there is absolutely no evidence on the part of the state that would tend to reduce this offense to any lower degree of rape than rape in the first degree, nor is that testimony such as to authorize the giving of instructions on any included offense. The court therefore will have to look to the testimony of the defendant in search of a basis for the giving of the requested instructions.

The defendant flatly denies that he accomplished the act of sexual intercourse testified to by the prosecutrix. Defendant denies that the prosecutrix overcame by resistance any assault by him upon her. The defendant testified that the prosecutrix got into his car and went with him voluntarily; that, when they reached the place the prosecutrix claims the crime was committed, the prosecutrix got out of the car voluntarily, and that defendant and prosecutrix took hold of hands and walked back to a small bridge and went under the bridge, and that the prosecutrix lay down there and found the ground to be wet, and that defendant, holding the prosecutrix's hand, led her through a water gate and out into a weed patch, where prosecutrix voluntarily lay down with her head in his arm, and that there defendant attempted to have intercourse with prosecutrix, but that prosecutrix resisted him and told him he would have to give her some money; that the defendant then got his pocketbook out and let the prosecutrix have a $20 bill to look at, and then again attempted to have intercourse with her, and that, when she resisted, he gave up; that from that time on the scuffle was over the defendant trying to get the $20 bill away from the prosecutrix.

The defendant then testified that he promised the prosecutrix to give her some money when they got back to camp where he could change the bill and also to buy her a dress in the place of the one that was torn. Defendant testified further:

"Q. I believe you stated on direct examination that the girl lay down under the bridge by herself, and she told you it was muddy and you took hold of her hand and pulled her up, is that right? A. She sat down is what I said.

"Q. Did she sit down in the mud? A. Yes.

"Q. What did you do? A. I picked her up by the hand, and helped her up.

"Q. You did not get her down in that mud and get on her, did you? A. No, I did not.

"Q. You did not do anything except to stand there and take her by the hand and pull her up is that right? A. I helped her up, yes, sir.

"Q. And then you went south? A. Yes, sir.

"Q. Through the water gate? A. Yes, sir.

"Q. How many times did you get her down after you got her through the water gate? A. I believe it was twice.

"Q. You say you did not have intercourse with her? A. No, sir.

"Q. Did you try to force her to have intercourse with you? A. I don't quite understand.

"Q. Did you use any force or violence trying to get her to have intercourse with you? A. Well, in a way I was trying to force her, but I didn't really try to take it away from her by hurting her or anything like that.

"Q. You say when you put your hand under this girl's clothes you felt the clothing rip? A. When I kind of put my hand under on her private part I heard something rip.

"Q. Could you hear it or feel it? A. I heard it rip. I could not tell what it was.

"Q. Were you using enough force with your hand to tear her clothing, make that rip? A. Yes.

"Q. Did you tear her clothing? A. I don't know whether I did or not, but I expect maybe I did in the scuffle, something like that.

"Q. You say the last scuffle was over the money? A. Yes.

"Q. You had already given up the idea of having intercourse with her at that time and you were just scuffling over the money? A. Yes, sir."

Defendant's counsel in their brief, in arguing that the evidence was insufficient to support the verdict, say: "She was on her back in the sand, her feet were straight out and her head was on the ground. Tom got down on his knees with his knees between her legs. His left hand was on the ground and with his right hand he held her left hand (How? With force? The record is silent) and there they had intercourse. Not a sign, nor a moan; not a kick nor a struggle; but for four minutes they had intercourse. During that time his hands were on the ground and her hands were up behind her head. They got up and returned to the car, drove quietly back to the dance ground, and there the officers met them. On being asked what had happened she said they had had a wreck. Being denied the truth of her story, she told another; and on being threatened with incarceration, it being apparent that she could not make a confession of voluntary intercourse, she said Rape. Let any man of active life contemplate this picture, as made by the record, lay aside the admitted indiscretions committed by the defendant for which he is not on trial, consider the question of rape and that alone—the State's evidence may show an intercourse, but it fails utterly to show any resistance or force. The evidence, we say, is insufficient to sustain the conviction."

The theory of the defense was, as shown by this argument, that no crime was committed, and that defendant was entitled to an acquittal. The defendant also presents another theory of the case, in which he says in effect, "I didn't try to rape her but was only using force and money as a persuasive, but, if you find I was trying to rape her

don't find that I actually raped her but only that I tried to." The defendant will not be permitted to adopt this theory in the trial court and base his defense upon that theory and ask a reversal upon a different theory in the appellate court. There must be substantial evidence to support the theory upon which he asks the reversal.

In Sayers v. State, 10 Okla. Cr. 233, 135 Pac. 1073, this court said:

"When a defendant, who has a right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one."

The defendant could have been acquitted by the jury on his evidence if they had believed his testimony. An examination of the entire record convinces the court from the evidence that the defendant was either guilty of rape or nothing.

In the case of Anderson v. State, supra, the question of the sufficiency of the instructions and the action of the court in refusing to give special instructions, it was held they must always be considered and determined by facts of each case in which they arise. The instructions must be considered in connection with their application to the evidence in the case in which they are given.

The evidence offered by the state and the defense offered by the defendant, raised no issue of a lesser crime than first degree rape, and the requested instructions were therefore properly refused.

For the reasons stated, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.