# J. W. (ROOSTER) ROBINSON v. STATE.

No. A-8890. Nov. 15, 1935.
(52 Pac. [2d] 100.)

Wells, Greer & Wells, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, for convenience hereinafter referred to as the defendant, was convicted of murder, and his punishment fixed at life imprisonment.

The evidence on behalf of the state shows that J. C. Duncan had invited a number of friends to his house for a dance on the 1st of December, 1933; about 12:30 a. m. they had ceased dancing and were getting ready to leave.

Cecil Anders, testifying for the state, stated:   Deceased wanted change for a dollar in order to pay Euel Sharp 25 cents; the defendant made change for him, and asked the deceased what the quarter was for, and deceased

remarked that it was none of his damn business. Anders further stated:

"When the difficulty occurred I saw a knife in the defendant's hand; Robinson struck at the deceased; I saw deceased bleeding up near his left shoulder; I got up and went out of the house and did not see the deceased any more before he died."

Euel Sharp, testifying for the state, stated:

"I was at the dance at J. C. Duncan's residence the night Duncan was killed; I saw the trouble between the deceased and defendant Robinson; it happened between 12 and 1 o'clock; after the dance closed the people were getting their coats to go home; Mr. Duncan owed me a quarter and I asked him if he had the change, and he told me he did not; Red King called Rooster Robinson and asked him if he had change for a dollar; Robinson said he did and asked Duncan what the quarter was for, and Duncan said, it's none of your damn business; I did not hear what Robinson said in reply, but saw him strike Duncan and saw blood on Duncan after the lick."

Thomas Harjo, testifying for the state, stated:

"I saw the trouble between the defendant Robinson and the deceased Duncan; Robinson and Duncan had a fight and Robinson stabbed Duncan with a knife; I don't know how the fight started; I only saw Robinson strike one time."

Other witnesses testified to seeing the defendant strike the deceased. All of the state witnesses claim they saw a knife in his hand.

The defendant, testifying in his own behalf, stated: He and the deceased had taken one or more drinks of whisky that night.

"After the dance broke up I was in the room with the deceased and the question of change came up; I got into

some trouble with Duncan, Duncan hit me on the side of the head, it seems like there was something in his fist, it staggered me back a little bit; I did not stab the deceased, but the deceased had a knife in his hand and struck at me with it and cut my wrist."

The defendant is the only one who testified the deceased had anything in his hand or struck at the defendant. All of the witnesses who were present in the room, as shown by the record, testified that when the deceased answered the question of the defendant as to what he wanted the quarter for, and told him it was "none of his damn business," that the defendant drew his knife and struck the deceased—from the effects of the wound J. C. Duncan died.

The defendant has assigned several errors alleged to have been committed, but in his brief defendant states:

"There are a number of assignments of errors introduced in the motion for new trial, and also in the petition in error. However, we think the tenth assignment of error is the only one of merit in this case. We therefore will discuss this assignment of error in the light of the evidence and the law as we see it."

It is urged for the defendant that where one is charged with murder, it is the duty of the court to submit to the jury for its consideration every degree of homicide which the evidence in any reasonable view of it is suggested, and if the evidence of it tends to prove different degrees the law of each degree which the evidence tends to prove should be submitted to the jury, whether it be requested on the part of the defendant or not.

The defendant further urges that it is the duty of the court to instruct on manslaughter if there is any evidence that the alleged crime might have been done under circumstances that might reduce it from murder to manslaughter;

citing in support of his contention the following: Atchison v. State, 3 Okla. Cr. 295, 105 Pac. 387; James v. State, 14 Okla. Cr. 204, 169 Pac. 1127; Harper v. State, 20 Okla. Cr. 43, 200 Pac. 879; Sherman v. State, 20 Okla. Cr. 306, 202 Pac. 521.

The holding of the court in the authorities cited by the defendant is the correct law when the facts in the record are sufficient to show that there might be different degrees of crime included in the charge of murder. In this case, the trial judge was of the opinion, and we think properly so, that, in view of the testimony of the defendant denying the possession of the knife or the infliction of the fatal wound that caused the death of the deceased, the defendant had precluded any instruction on any degree of felonious homicide other than that of murder.

Sections 2217 and 3076, O. S. 1931, are as follows:

"2217. A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed."

"3076. Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

Section 3079, O. S. 1931, is as follows:

"In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict, and if it state the testimony of the case, it must in addition inform the jury that they are the exclusive judges of all questions of fact. Either party may present to the court any written charge, and request that it be given. If the court thinks it cor-

rect and pertinent, it must be given, if not, it must be refused. Upon each charge presented and given or refused the court must indorse or sign its decision. If part of any written charge be given and part refused the court must distinguish, showing by the indorsement or answer what part of each charge was given and what part refused."

It will be seen from section 3079, supra, that the trial court is only required to give such instructions to the jury as he thinks sufficient to cover the law of the case, and in this case it appears that the trial court held that there was not sufficient evidence to warrant the court in instructing the jury as to manslaughter in the first or second degree.

It is the duty of the defendant, if he thinks the instructions given by the court are not sufficient to cover the issues in the case, to present to the court instructions in writing, and request that the court give them. No written instructions were presented to the court by the defendant; but the defendant dictated into the record a request for an instruction on manslaughter. Under the law of this state, the court should instruct on every degree of felonious homicide where there is some competent or reasonable evidence to support the instruction. When the defendant who has the right of election as to several defenses takes the witness stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one. Panther v. State, 43 Okla. Cr. 128, 277 Pac. 247; Young v. State, 48 Okla. Cr. 443, 292 Pac. 867.

The evidence in this case on the part of the state, if believed, proved the defendant guilty of murder. There is no evidence on behalf of the state that tends to reduce the degree of homicide to manslaughter, and the defen-

dant made no effort to justify or excuse the killing; in fact, he denied having killed the deceased. The issues presented in this case are clear cut and permit no middle ground; either the defendant killed the deceased in the manner testified to by the state witnesses, or the deceased met his death by his own hand, without any fault on the part of the defendant. The testimony is clear that the defendant, without any justification other than the remark of the deceased in reply to the question of the defendant as to what he was going to do with the quarter, and deceased's reply that it was none of his damn business, the defendant then struck the fatal blow.

The contention of the defendant that the court erred in not giving the instruction upon manslaughter is without merit when the facts in this case are carefully considered..

In Newby v. State, 17 Okla. Cr. 291, 188 Pac. 124, this court, in the third paragraph of the syllabus, stated:

"The refusal to give manslaughter instructions in a prosecution for murder is not error, if there is no evidence tending to reduce the degree of the crime from murder to manslaughter in either degree."

This court has many times held that the instructions must be applicable to the evidence, and that the trial court is not compelled to give instructions, although correctly stating the law, unless the evidence reasonably supports such requested instructions. Smith v. State, 22 Okla. Cr. 383, 212 Pac. 1012; Fray v. State, 46 Okla. Cr. 260, 285 Pac. 142; Ford v. State, 52 Okla. Cr. 321, 5 Pac. (2d) 170.

After a careful consideration of the evidence and circumstances, and the law applicable to the facts as given by the court to the jury, we hold that the court did not

err in refusing to instruct the jury on the question of manslaughter as urged by the defendant.

The defendant was accorded a fair and impartial trial. The jury was properly instructed as to the law applicable to the facts. There are no errors in the record warranting a reversal. The judgment is affirmed.

EDWARDS and DOYLE, JJ., concur.