# JACK ROBERTS v. STATE.

No. A-10233.  Feb. 13, 1946.

(166 P. 2d 111.)

John W. Tyree, of Lawton, A. J. Morris, of Anadarko, and C. H. Gilmer, of Kerrville, Tex., for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, P. J.   The defendant, Jack Roberts, was charged in the district court of Comanche county with the crime of manslaughter in the first degree; was tried, convicted of said offense, and sentenced to serve five years in the State Penitentiary, and has appealed.

This is one of the most tragic cases we have ever reviewed.   The defendant, a young man of excellent reputation, was reared on a ranch near Uvalde, Tex.   At the outbreak of the recent World War, he enlisted in the United States Army, and was sent for training to Fort Sill, Okla., at which place he was located at the time of the commission of the alleged homicide.

The deceased, Sam Henderson, was a highway patrolman stationed at Lawton, Okla. He was one of the outstanding officers in the patrol and was well liked by all who knew him. The author of this opinion and the deceased attended the University of Oklahoma together and had been close personal friends for 20 years prior to his death. He was a large, impressive appearing man, weighing approximately 275 pounds, and his death has been keenly felt by the members of the Highway Patrol and his many other friends.

The information set forth two counts. The first count charged that the defendant, while operating an automobile in an intoxicated condition, did run into and strike the deceased with such force as to cause his death. The second count charged that the defendant, while operating his automobile in a reckless and careless manner, did drive his automobile into the deceased with such force as to cause his death.

After the conviction of the defendant, by agreement of all parties concerned, he was granted permission to go overseas with his combat unit. Several months ago, the commanding officer of his company wrote this court from overseas, stating that the defendant was one of the outstanding soldiers in his company and inquiring as to what disposition had been made of his appeal. Because the defendant was absent from the state and unable to respond to any judgment that might be rendered, this court was very liberal in allowing both the representatives of the state and the defendant considerable additional time in which to file respective briefs. It was only recently that all briefs were filed and the cause submitted for decision.

The original brief presented on behalf of the defendant covered 120 pages and presented many assignments of

error. A large part of the brief was devoted to the contention that the evidence was insufficient to sustain the conviction. We shall not make an extensive review of the evidence.

Under the proof of the state, the deceased and his associate patrolman had stopped an automobile driven by one Inks on Lee street, in the city of Lawton, about 10:30 p. m., on May 7, 1941. The patrol car was stopped just behind the Inks car. The two patrolmen and Inks were standing at the rear of the Inks car with the deceased standing slightly to the north of the line of the two cars. The road at that place was muddy and full of chug holes. While they were standing in this position, the automobile driven by the defendant came by at a high rate of speed and struck the deceased with such force that he was killed. The defendant did not stop his automobile, but drove it on to a tavern where he stopped and later caught a taxi back to his barracks at Fort Sill. Upon his arrest two hours later, he was in an intoxicated condition. The two companions, who were traveling in the same car with the defendant at the time of the alleged homicide, testified on behalf of the state. They were friendly to the defendant and both of them swore that they did not know that the defendant had ever struck anything and that he was not intoxicated. They testified, however, that the defendant was driving the car pretty fast and that Lee street was full of chug holes to where they bounced a lot while driving over it. When the defendant and his companion Moore left the automobile at the tavern, the witness Combs remained in the back seat in an intoxicated condition. The state's proof also showed that the defendant and his companions had been drinking beer at different places during the evening, prior to the time of the alleged homicide. One of the state's witnesses, who lived on Lee street near

the place where the accident occurred, testified that the road was narrow at the place of the collision and that there were several deep chug holes along the north side of the road.

On behalf of the defendant, the proof showed that he was not in an intoxicated condition prior to the time of the alleged homicide, but that he had drunk two or three glasses of beer during the three or four hours preceding the commission of the homicide. Witnesses, who saw the defendant at the time he left a dance hall in his automobile just before the deceased was struck, swore that he did not appear to be under the influence of intoxicating liquor. The defendant's proof showed that after his automobile allegedly struck the deceased, he drove to the Little Orchid Tavern. That he was there several minutes during which he met some soldier friends and drank some whisky with them. That the drinking of this whisky on top of the beer which he had drunk earlier in the evening did cause him to become intoxicated, and that when he was arrested two hours later in his bunk at the military reservation, he was still suffering from the effects of the whisky which he had drunk with the other soldiers at the Little Orchid. The defendant himself swore that he did not know that he had ever struck anyone with his automobile. He testified that after he came over a rise in the road he saw the two automobiles parked along the road and that he was driving at a pretty fast rate of speed. That he hit a chug hole just as he came near the cars that caused him to veer towards the cars, but that he righted his car and did not know that he had ever hit any one. A large number of witnesses from the State of Texas attended the trial and swore to the good reputation which the defendant bore in his home community.

We have only attempted to make a sufficient sum-

mary of the evidence to show that the position of the defendant that there was no evidence to sustain the conviction is untenable.

It is contended that the court erred in refusing to give an instruction on manslaughter in the second degree requested by the defendant.

It is well settled that in a prosecution for murder, the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests, and, if the evidence tends to prove different degrees, the law of each degree which the evidence tends to prove should be submitted to the jury. Atchison v. State, 3 Okla. Cr. 295, 105 P. 387; Kent v. State, 8 Okla. 188, 126 P. 1940; James v. State, 14 Okla. Cr. 204, 169 P. 1127; Mead v. State, 65 Okla. Cr. 86, 83 P. 2d 404; Hodges v. State, 65 Okla. Cr. 277, 85 P. 2d 443; Tucker v. State, 66 Okla. Cr. 335, 92 P. 2d 595; Clark v. State, 63 Okla. Cr. 138, 73 P. 2d 481; Cooper v. State, 61 Okla. Cr. 318, 67 P. 2d 981; Smith v. State, 59 Okla. Cr. 111, 56 P. 2d 923, 924.

In Smith v. State, supra, it is stated:

"In the trial of a charge of murder it is the duty of the trial court to determine as a matter of law whether there is any evidence tending to reduce the crime to the lower degrees of homicide, and, if so, it becomes his duty to instruct the jury the law of such lower degree."

"When it appears that a defendant has committed a public offense and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only."

"Where there is evidence which tends to reduce the degree of the homicide from murder to manslaughter in either of its degrees, the trial court should give the defendant the benefit of any doubt which the evidence may

suggest, and instruct the jury the law of each degree which the evidence tends to prove."

By statute, it is provided:

"When it appears that a defendant has committed a public offense and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degree[s] only." 22 O. S. 1941 § 837.

Manslaughter in the second degree is defined as follows:

"Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree." 21 O. S. 1941 § 716.

This court has had this statute under consideration in many appeal cases involving homicides growing out of the operation of automobiles.

The case of Nail v. State, 33 Okla. Cr. 100, 242 P. 270, was similar to the case at bar. There, a conviction for manslaughter in the second degree was sustained. This court held that the jury did not find the facts necessary to sustain a conviction for murder or manslaughter in the first degree, but they did find that the death of the deceased was caused by the act of culpable negligence of the defendant. In defining culpable negligence, this court stated:

" 'Culpable negligence' is the omission to do something which a reasonable and prudent person would do, or the doing of something which such a person would not do under the circumstances surrounding the particular case."

The court also said:

"The driving of an automobile upon the highway, with a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and thereby causing the death of another, establishes the crime of manslaughter in the second degree."

In the case of Clark v. State, supra [63 Okla. Cr. 138, 73 P. 2d 482], the deceased was killed by a truck driven by defendant. This court stated:

"Where defendant is charged in the information with the crime of murder, if the facts warrant, it is not only proper for the court to instruct the jury in reference to manslaughter in the first and second degree, but it is his duty to do so."

In that case, as in the instant case, the defendant was charged with driving his automobile while under the influence of intoxicating liquor at the time of the alleged homicide. On the issue as to whether the defendant was intoxicated at the time of the collision, the evidence was in conflict, the same as in the instant case. There would have been sufficient evidence for the jury to have concluded in either case that the defendant was intoxicated or that he was not intoxicated. This court there held that the court properly submitted the issue of manslaughter in the second degree, as the jury, under the evidence, could have found that the defendant was not intoxicated at the time of the commission of the alleged homicide, but that he was guilty of culpable negligence in the operation of his automobile. See, also, the following cases: Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412; Freeman v. State, 69 Okla. Cr. 164, 101 P. 2d 653; Wilson v. State, 70 Okla. Cr. 262, 105 P. 2d 789; Ansley v. State, 44 Okla. Cr. 382, 281 P. 160; Walters v. State, 57 Okla. Cr. 424, 48 P. 2d 875; Chandler v. State, 79 Okla. Cr. 323, 146 P. 2d 598; Berry v. State, 54 Okla. Cr. 154, 18 P. 2d 285; Sprouse v. State, 52 Okla. Cr. 184, 3 P. 2d 918; Herndon v. State, 38

Okla. Cr. 338, 261 P. 378; Smith v. State, 46 Okla. Cr. 160, 287 P. 1103.

In Wilson v. State, supra, it is held:

"The driving of an automobile upon the highway, with a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and thereby causing the death of another, establishes the crime of manslaughter in the second degree."

"There must be negligence rising to the degree of criminal or culpable negligence. The culpability of a defendant is a question of fact for the jury, and the test is: Do the acts charged as criminal show a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and did said acts cause the death of deceased? If so, it establishes a case of criminal negligence."

In the body of the opinion, it is stated:

"It may, however, be stated, that a violation of this statute does not depend on one being under the influence of intoxicating liquor at the time of its violation. One may be guilty of culpable and criminal negligence regardless of the fact as to whether he was drinking or not. An automobile in the hands of a person who handles the same in a reckless and careless manner, and in an utter disregard of the lives of others, is just as guilty under the statute as one who handles it while in an intoxicated condition. The degree of punishment may be different, but the guilt and responsibility is just the same.

"The evidence in this case reveals that this defendant was not driving her automobile, as provided by the statute, at a careful and prudent rate of speed, such as would be reasonable and proper, and having due regard to the traffic and condition of the road, and in such a manner, and under such control that if danger appeared she could bring it to a stop within the assured clear distance ahead."

In the instant case, the proof of the state showed that the street on which the homicide occurred was full of mud

holes and that the car of the defendant was being driven at a speed of from 40 to 50 miles per hour. This case was prosecuted on the theory that it was manslaughter in the first degree under the statute which provides that homicide is manslaughter in the first degree when perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor. 21 O. S. 1941 § 711. The misdemeanor relied upon the prosecution was that the defendant, at the time of the homicide, was operating his automobile while he was in an intoxicated condition. 47 O. S. 1941 § 93. If the jury had seen fit to accept the testimony offered on behalf of the defendant, they would have been justified in finding that the defendant was not under the influence of intoxicating liquor at the time of the collision. Yet, they could have held, under the evidence, in considering the condition of the road, the position of the two cars which were stopped on the road, and the speed at which it is alleged the defendant was driving, that he was guilty of culpable negligence in the operation of his automobile. Under such circumstances, we think the court committed reversible error in refusing to give an instruction on manslaughter in the second degree at the request of counsel for the defendant.

There is another cogent reason why the trial court should have submitted the issue of manslaughter in the second degree. As stated above, the information filed against the defendant contained two counts. The first count charged the defendant with the crime of manslaughter in the first degree and alleged that the defendant killed deceased while committing a misdemeanor, to wit, driving an automobile while under the influence of intoxicating liquor. The second count of the information charged the defendant with the crime of manslaughter in the second degree, in that it charged the defendant with

driving and operating his automobile upon the public streets of Lawton, Okla., at a high rate of speed and with a reckless disregard for the safety of others.

By statute, it is provided:

"The indictment or information must charge but one offense, but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, and the court or jury trying the cause may find all or either of the persons guilty of either of the offenses charged, and the same offense may be set forth in different forms or degrees under different counts; and where the offense may be committed by the use of different means, the means may be alleged in the alternative in the same county." 22 O. S. 1941 § 404.

Since the county attorney charged the defendant in the information with two counts of manslaughter, and the court did not require him to elect which of the two counts he was relying upon for a conviction, it certainly became the duty of the court to submit the issues covered by the information to the jury for their determination. Under such circumstances, since manslaughter in the second degree was charged in the second count of the information, it was the court's duty to submit the question of the guilt or innocence of the defendant of such offense by proper instructions.

Several photographs taken the day following the alleged homicide were admitted in evidence over the strenuous objections of counsel for the defendant. The photographer testified that the pictures faithfully represented whatever each of them purported to reproduce.

The witnesses Inks and Kizziar testified that the following day they drove Inks' automobile and the highway patrol car to the exact point where they were sitting at the time the deceased was struck by defendant's automobile. They, also, testified that the positions they assumed in some of the pictures were the exact positions at which they were standing at the time the patrolman was struck.

In Cooper v. State, 61 Okla. Cr. 318, 67 P. 2d 981, 982, this court held:

"When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places."

· See, also, Morris v. State, 6 Okla. Cr. 29, 115 P. 1030, to the same effect.

The general rule concerning the admission of photographs in evidence is stated in Wharton's Criminal Evidence (11th Ed.) section 773, p. 1317, as follows:

"It is too well recognized to admit of any doubt that in proper cases, photographs or pictorial representations of physical objects or localities are admissible in evidence. The principle of admitting this kind of evidence is but a corollary to that permitting the introduction of the physical object itself. Stated as a general rule, the proposition is that photographs are admissible in evidence when they are shown to have been accurately taken, to be correct representation of the subject in controversy, and where they tend to illustrate any material fact in the case, or to shed light upon the transaction before the court."

As to posed photographs taken some time subsequent to the time in controversy, based on recollection of witnesses, it is stated:

"There is a decided conflict of authority as to whether or not photographs of an attempted reproduction of the scene of a crime showing posed persons, dummies, or other objects are admissible to illustrate the contention of the party offering them as to the relative positions of the movable objects so represented at the time and place of the crime involved in the prosecution under consideration. Some courts have looked with disfavor upon the admission of photographs of an attempted theory or contention of the party offering them, as recalled by his witnesses, of movable or moving objects. Thus, it was held error to introduce in evidence in a prosecution for murder photographic representations of tableaux vivants carefully arranged by the chief witness for the State, intended to exhibit the situations of the parties and the scene of the tragedy according to such witness's account of it. * * * In most jurisdictions where this question of admissibility has arisen, however, the courts have held such photographs admissible, when a proper foundation therefor has been laid by preliminary testimony showing that the objects and situations portrayed are faithfully represented as to position. The holding of these cases has been elucidated by one court, in a case in which it held admissible a photograph of the interior of a saloon in which a shooting occurred showing a group of pre-arranged figures to indicate the position of the principal parties at the time of the homicide as near as the witness could determine, as follows: 'It has always been permissible to use diagrams in the trial of causes, both civil and criminal, and especially in the latter class to use diagrams, if shown to be correct, to illustrate the position of persons and places, and to better enable the witnesses to properly locate them. If, then, a diagram may be used for such a purpose, we can see no good reason why a photograph may not be, by which is presented to view everything within the range of the camera at the time the photograph is taken. This did not deprive the defendant of the right to cross-examine the witnesses who testified to its correctness, and as to the positions of the persons in the saloon, or its fixtures. He had the same right

in this regard that he would have had, had a diagram been used instead of the photograph.' "

The defendant contends that the Supreme Court has established a rule that photographs taken for the purpose of illustrating the theory of either party to a lawsuit are incompetent and inadmissible, citing Colonial Refining Co. v. Lathrop, 64 Okla. 47, 166 P. 747, L. R. A. 1917F, 890, and Massey v. Ivester, 168 Okla. 464, 33 P. 2d 765.

In Colonial Refining Co. v. Lathrop, supra, the Supreme Court held:

"The probative value of photographs depends upon their accuracy. They must be shown by extrinsic evidence to be faithful representations of the place or subject, as it existed at the time involved in the controversy. And photographs taken to show more than this, with men in various assumed positions, and things in various assumed situations, intended only to illustrate hypothetical situations, and to explain certain theories of the parties, are incompetent."

In Massey v. Ivester, supra, it is stated:

"Photographs purporting to depict the conditions at the point of accident may be admitted in evidence, if it is proven or admitted that the objects surrounding the scene of the accident are in the same condition as they were at the time of the acts complained of, but may not be admitted as a 'stage setting' for the purpose of re-enacting the accident."

To the same effect, see Empire Oil & Refining Co. v. Fields, 188 Okla. 666, 112 P. 2d 395.

In connection with this question, it is interesting to note that in the case of Missouri Pacific Railroad Co. v. Steel, 141 Okla. 133, 284 P. 21, 22, our Supreme Court laid down the following rule of law:

"Photographs of the scene of an accident, when ac-companied by proper proof of their accuracy and correct-

ness, are admissible in evidence for the consideration of the court and jury, but their accuracy and correctness are not irrefutable, and, where evidence has been received to the effect that such photographs are accurate and correctly represent a certain scene of accident, though taken some time thereafter, it is not error for the court to permit opposing evidence by a witness properly qualified to the effect that such photographs do not correctly represent the scene at the time of such accident and pointing out the alleged inaccuracies."

We shall adhere to the rule of law adopted by the Supreme Court that photographs taken for the purpose of illustrating some hypothetical situations which might arise are inadmissible, but unless some of the photographs herein admitted come within this prohibition, the court did not err in admitting them in evidence. Exhibits D, E, F, and G were clearly admissible. The only photographs to which objection might be seriously urged are those set forth in the State's Exhibits A, B, and C. The testimony of the photographer, when considered together with that of the witnesses Inks and Kizziar, justified the admission in evidence of Exhibits A and B, as they show the condition of the road the following day after the homicide at the particular place where the homicide occurred, and show, according to the witnesses, the exact location of the Inks car and the highway patrol car on the road at the point where they were at the time of the collision and the exact place Inks and Kizziar were standing when the deceased was struck. Exhibit C, under the rule herein above announced and with no further explanation concerning it than appears in the record, would be inadmissible as a stage setting to bolster the hypothetical theory of the state. Although the automobiles of Inks and Kizziar are situated at the exact spot where they sat the preceding night at the time of the alleged commission of the homicide, this exhibit shows a dummy placed on the

ground some distance to the rear of the highway patrol car, and Kizziar and Inks are standing in the picture in a position different to that which they were standing at the time the deceased was struck. There is, also, a third car in the picture which is not identified but is stopped close to the body of the dummy which purportedly represented that of the deceased after he had been knocked several feet through the air. Both Kizziar and Inks admitted that they were not looking at the deceased at the time he was struck, and this photograph evidently was taken with a view of sustaining their hypothetical theory that the deceased had to have been in a certain position at the time he was struck in order to crack the windshield in the patrol car. Upon a re-trial of this case, unless the testimony concerning this particular exhibit C is clarified, so as to make it admissible under the rule herein above announced, it should not be admitted in evidence.

The questions raised by the defendant in regard to the objection to the special venire, and objection to having the case set specially at a time when it was the only case to be tried and their contention that the testimony of Major Grayeb was improperly used in rebuttal, need not be considered as those questions will not arise upon another trial.

A consideration of the information shows that it is not duplicitious and that the court properly overruled the demurrer thereto. Clark v. State, supra.

For the foregoing reasons, the judgment of the district court of Comanche county is reversed and this cause is remanded for a new trial.

BAREFOOT, J., concurs. DOYLE, J., not participating.