**Homer PETTY, Plaintiff In Error,**

v.

**The STATE of Oklahoma, Defendant In Error.**

**No. A–12125.**

Criminal Court of Appeals of Oklahoma.
April 20, 1955.

Homer Petty, pro se.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

Richard Gossett, Fred Whetsell, McAlester, amici curiae.

BRETT, Judge.

The Plaintiff in Error, Homer Petty, defendant below, was charged by information, in the District Court of Ottawa County, Oklahoma, with the crime of Murder, T. 21 § 701, O.S.1951, allegedly

committed on November 4th, 1953, against the person of one Henry Rains, by means of a knife, inflicting fatal wounds from which Rains died, all of which things occurred in the aforesaid County and State. The defendant was tried by a jury, convicted, his punishment fixed at life imprisonment in the State Penitentiary, T. 21 § 707, O.S.1951; judgment and sentence was entered accordingly, from which this appeal has been perfected.

Two reputable attorneys, the Honorable Vernon L. Martin, and J. R. Hall, Jr., both of Miami, Oklahoma, were appointed by the trial court to represent the defendant, Petty, and they made a vigorous defense in the defendant's behalf, but were granted leave by this court to withdraw on the appeal.

On the appeal, the Legal Assistance Committee, of Pittsburg County, was called upon to brief this case in behalf of the defendant; hence Mr. Richard Gossett, and Mr. Fred Whetsell, of the McAlester, Oklahoma Bar, responded and represented the defendant by oral argument, and by written brief, duly filed herein. For their services, the Criminal Court of Appeals hereby commends them. In the defendant's brief, it is urged there is no background for this killing; with this assertion we cannot agree.

It appears from the record herein, that the defendant, Homer Petty, and the decedent, Henry Rains, had some prior difficulty growing out of the fact that Henry Rains, the decedent, garnisheed the defendant's wages for a beer bill owed to Rains, as a tavern operator. On another prior occasion, the record discloses they had been embroiled in an inconsequential fight in a beer tavern. Rains had left Picher and moved to Idaho and had returned to Picher for a visit.

On the occasion in question, it appears that both the defendant, Petty, and Rains, had been on separate drinking tours during the day, and finally arrived at "Smokies" Bar, where Rains was seated (in the Second Street Bar), in a booth on the outside, near the aisle, between the booth and stools in front of the counter. The record further discloses that the defendant had been drinking beer and whiskey in the afternoon preceding the altercation, about 6:30 o'clock P.M. The defendant came into the Second Street Bar establishment where the decedent, Rains, was sitting in the booth and immediately proceeded to the back of the Tavern, past the decedent, in the direction of the men's rest room. As the defendant, Petty passed where the decedent was seated, Rains stuck out his hand and he and Petty shook hands. The record shows, that Rains asked Petty if he was still mad at him, and Petty said no he was not mad "at him, or nobody"; Petty patted Rains three times on the shoulder and said, "you ain't very rough", and went back to the rest room. There is no substantial conflict in this delineation and what the defendant testified to, except that the defendant testified, he offered to buy Rains a drink, and he said Rains replied, he didn't want "nothing" he had. The defendant testified further that there was nothing said or done, other than what took place at that time that would indicate any animosity between them. Shortly after the defendant, Petty, passed the booth he was observed as he came out of the rest room with a knife in his hand; the defendant Petty, then walked toward the booth where Rains was seated, and as Rains started to rise, or as Petty jerked him out of his seat, he struck him, and he and the defendant fell to the floor. The record shows there was no fighting until they fell to the floor. Petty was on top of Rains, the record discloses, and Petty was grabbed around the neck and pulled back; when this was done he had the knife in the decedent, Rains', jaw. When the fight was concluded, Rains had sustained several severe wounds on the right side of his neck and jaw; described by the Doctor, as follows:

"There was a superior wound which was approximately five inches long through the entire structure of the right neck, including the jugular vein, the right Carotid Artery and into, through and into the Trachea, the inferior wound was a little longer,

approximately seven inches separating the clavicle from the sternum, cutting the right sub-clavian artery and penetrated the chest wall."

The record discloses that the decedent, Rains, was unarmed at the time of the killing, possessing not even so much as a pocket knife.

The defendant contended that Rains grabbed him as he went by the booth and pulled him over to him and that thereafter they fell to the floor; the defendant related he was unarmed but in the fight he got hold of a knife from some source and used it in self-defense; in this he was uncorroborated. He attempted to make it appear that someone else had put the knife in his hands, or he had wrested the knife from the decedent, Rains. The record, however, establishes the knife was in Petty's possession until it was wrested from him after he had wounded Rains.

The defendant, Petty, was examined shortly after his arrest, by a physician who found no cuts or wounds upon him, that required treatment; in fact, the Doctor testified Petty had only a few scratches around his neck, of no consequence.

The defendant complains that the State's witnesses were highly intoxicated, and some of them ex-convicts, but this argument does not impress us; it is merely the "pot calling the kettle black", since the defense witnesses made their observations under the same conditions, and some of them were ex-convicts. There is sufficient competent proof to clearly show the decedent, a cripple, was brutally assaulted, without warning, with a knife by the defendant, and as a result thereof, Rains died in a few minutes thereafter.

■ The physical facts, as well as the sworn testimony, and the photographs of Rains, disclose an apparent attack from behind. A study of the photographs disclose the deep wound on the right side of the neck was a stab wound (which the Doctor testified severed his wind pipe) with the knife being pulled back toward the back of the head, and leaving a long gash. Other wounds indicate they were inflicted by drawing the knife from the front to the back. In this connection, the defendant complains of the introduction of the photographs of the decedent, but there is no merit to this contention. We are sure they tell a far clearer picture of what happened than the sworn testimony. They are admissible under the rule announced in Roberts v. State, 82 Okl.Cr. 75, 166 P.2d 111, in Syllabus 8.

■ The defendant complains he was interrogated relative to prior convictions. In Reagan v. State, 35 Okl.Cr. 332, 250 P. 435:

"In a criminal case, where a defendant takes the stand in his own behalf, he may be asked by the prosecution whether or not he has been convicted of any particular crime (Comp.St. 1921, § 585 [12 O.S.1951 § 381])."

Slaughter v. State, 94 Okl.Cr. 407, 236 P.2d 993.

The record shows the defendant had served 18 months in the Penitentiary for assault with intent to kill, and had other prior convictions for assault and battery, including an assault and battery on a woman, Francis Smith, as well as other convictions for public drunkenness. It was not improper to bring these things out on cross-examination, since they went to the defendant's credibility.

It therefore appears that the killing was unprovoked, by Rains, but malicious, premeditated, and cold-blooded on the part of Petty. The jury undoubtedly concluded that the defendant lulled Rains into a state of false security with his expression of apparent forgiveness for their past animosity, one towards the other, and by his attitude he expressed an apparent desire to be friendly. The jury apparently believed that he went past the decedent, Rains, to the rest room, opened the pocket knife, and returned, striking the first blow in the decedent's jaw, or neck. When Rains arose to defend himself, and they fell to the floor, Petty, on his feet, over Rains, continued striking at the right side of his neck, until he inflicted the deep and fatal cuts heretofore described.

■ There is ample competent evidence from which the jury could reasonably

conclude that the defendant was guilty, as charged, and where such is the case, the Criminal Court of Appeals will not interfere with the verdict. Counts v. State, 95 Okl.Cr. 35, 239 P.2d 438; Lyons v. State, 95 Okl.Cr. 92, 240 P.2d 461; Estes v. State, 95 Okl.Cr. 209, 242 P.2d 459, and numerous other cases to the same effect. The defendant's contention that the evidence was insufficient to sustain the penalty imposed is, likewise without merit and it would be improper for us to interfere with the same.

The defendant makes other assignments of error which, in the face of the whole record, we do not deem of importance.

For all the above and foregoing reasons, the judgment and sentence herein imposed is accordingly affirmed.

JONES, P. J., and POWELL, J., concur.