Harry Beryl McNUTT, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12176.

Criminal Court of Appeals of Oklahoma.

Sept. 21, 1955.

Paul W. Updegraff, Norman, Cecil C. Hamilton, Oklahoma City, Sam F. Whitlock, Norman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

On April 7, 1954, about 4:30 P.M. the defendant, Harry Beryl McNutt, an oil company employee, was driving a truck-tractor in a northerly direction on a graveled county road east of Lexington. At an intersection he collided with a truck being driven by Hershel Curtis Roberson which had come from the east on another graveled road. Roberson died as a result of the collision a few minutes after it occurred. Thereafter the defendant was charged by an information filed in the District Court of Cleveland County with the crime of manslaughter in the first degree, was tried, found guilty of manslaughter in the second degree and pursuant to the verdict of the jury was sentenced to pay a fine of $750.

On appeal three assignments of error are presented: 1. The evidence was insufficient to sustain the conviction. 2. The court erred in refusing defendant's requested instruction which presented defendant's theory of the case. 3. The court erred in admitting State's exhibit number three which allegedly was a posed photograph to illustrate a hypothetical situation supporting the theory of the State.

We are of the opinion that the defendant is correct in his contention as set forth in assignment number two, but that assign-

ments of error numbered one and three cannot be sustained. We shall not give an extended statement of the facts. The State's case was based chiefly upon the investigation conducted by a highway patrolman who was at the scene of the collision about 30 minutes after it occurred. He testified that the point of impact was 10 feet from the east side and 9 feet from the south side of the intersection and that apparently from the skid marks neither automobile made an effort to stop until the vehicles were within about 8 feet of each other. The intersecting roads were graveled and there were no stop signs at the intersection. The patrolman said defendant's truck was equipped with a tachometer which is a device for recording the speed of a vehicle and that the tachometer showed defendant's truck was going 41 miles an hour and then there was an abrupt drop to zero. The State witnesses described the intersection as an open intersection, while the witnesses for the defendant called it a blind intersection because, as they stated, a vehicle proceeding north on the north-south road was unable to see a vehicle approaching from the east on the east-west road because of an embankment on the south side of the east-west road and because of thick growth of weeds in a pasture which obscured the vision. All parties seemed agreed that a person coming from the east on the east-west road would be unable to see a vehicle approaching the intersection from the south. The State's evidence, however, showed that the top of a motor vehicle traveling west on the east-west road would be visible continuously for about 100 yards before reaching the intersection to a person in a car approaching from the south.

The highway patrolman further testified that defendant told him that he first saw the truck of the deceased when the defendant's truck was about 200 feet south of the intersection and that defendant took him to the place on the road where he first saw the truck being driven by the deceased. That the patrolman asked defendant why he didn't stop if he saw the truck of the deceased and defendant said he thought the other truck was going to stop. That the next day he stood at the place designated by the defendant while another troop-

er drove the highway patrol car on the east-west road in the direction in which the truck driven by the deceased was proceeding and that the witness could see the top of the highway patrol car at all times from a point approximately 300 feet east of the intersection to the place where the collision occurred. The evidence on behalf of the defendant contradicted the testimony of the highway patrolman and tended to establish that the gravel road running east from the intersection sloped downward for several hundred feet. That there was a high embankment on the south side of this road and that weeds and other growth would prevent a person proceeding towards the intersection on the north-south road from seeing a vehicle approaching from the east.

The truck driven by the deceased was a cattle truck and the top of the sideboards measured 8 feet and 8 inches from the ground. It was the theory of the State that the vehicles approached the intersection traveling at approximately the same speed, at about the same time and that under the law the vehicle on the right was entitled to the right-of-way. 47 O.S.Supp.1953, § 121.6 provides:

"When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

██ In defendant's brief it is asserted that the weight of the evidence did not support the conviction. On appeal this court does not weigh the evidence but our function is limited to ascertaining whether there is competent evidence in the record reasonably tending to sustain the verdict. To uphold the contention of the accused would be to ignore the evidence of the patrolman.

However, it should be pointed out that this court has held:

"Before one may be convicted of committing a crime, there should be a higher degree of negligence than is required to establish civil liability; the rule in civil liability being based upon the preponderance of the evidence, while in criminal cases one must be convicted beyond a reasonable doubt." Frey v. State, 97 Okl.Cr. 410, 265 P.2d 502, 503.

Assignment of error number three is directed at the admission of State's exhibit number three. The State introduced in evidence four photographs taken at the scene of the collision. Objection was interposed to only one of them and that objection was directed at the fact that a highway patrol car was stationed on the east-west road east of the intersection and the picture allegedly was taken at an angle for the purpose of illustrating the hypothetical contention of the State that the highway patrol car could be seen from a point on the north-south road about 30 yards south of the intersection. The defendant introduced 18 pictures. In admitting the contested picture, the trial court instructed the jury that the photograph was being admitted for the limited purpose of showing the condition of the road and further stated that it was admitted for the purpose of showing "the condition of the road and not to the condition of the car that is setting in the road and to disregard the police car so far as it is concerned." In admitting in evidence three of the pictures offered by the defendant over the objections of the county attorney, the court placed a similar limitation on their admission.

██ We have examined the picture in question and it does not appear to be a posed photograph such as we condemned in Roberts v. State, 82 Okl.Cr. 75, 166 P.2d 111. It is our conclusion that the court correctly admitted all of the photographs in evidence as they were appropriate aids for the consideration of the jury in their application of the testimony and better enabled them to understand the evidence in the case. Mott v. State, 94 Okl.Cr. 145, 232 P.2d 166; Roberts v. State, supra; Langley v. State, 90 Okl.Cr. 310, 213 P.2d 886.

██ The court erred in refusing to give defendant's requested instruction number twelve or to give some instruction substantially in the language of requested instruction number twelve which would have submitted to the jury the theory of the defense.

This court has held that the defendant is entitled to a clear affirmative instruction to the jury submitting the theory of the defense where there is any competent evidence in the record substantiating the theory of the defendant. Skelley v. State, 64 Okl.Cr. 112, 77 P.2d 1162; Payton v. State, 4 Okl.Cr. 316, 111 P. 666; Johnson v. State, 59 Okl.Cr. 283, 58 P.2d 156; Moody v. State, 92 Okl.Cr. 20, 220 P.2d 297; Turpen v. State, 89 Okl.Cr. 6, 204 P.2d 298. Defendant's requested instruction number twelve reads:

"You are instructed that the driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.'

"If you find from the evidence in this case that the truck driven by the defendant entered the intersection first and was traveling at a reasonable rate of speed an appreciable length of time ahead of the other vehicle, as the vehicle first entering the intersection the defendant truck would have the right-of-way over the decedent's truck.

"In this connection you are instructed it is the defendant's theory of the case that the defendant's truck had entered the intersection first an appreciable length of time ahead of the decedent's automobile truck and had the right-of-way, and that the automobile trucks would not have collided if the decedent had yielded the right-of-way and been driving his automobile truck at a careful and prudent speed. If you so find from the facts in this case or have a reasonable doubt thereof, it will be your duty to vote not guilty and acquit the defendant."

The defendant testifying in his own behalf stated that he was driving a truck-tractor about 40 miles an hour as he approached the intersection and that he reduced his speed to about 25 miles an hour; that as he got close to the intersection he saw that it was a blind intersection so he reduced his speed further to 15 miles an hour as he entered the intersection. That after he entered the intersection he first saw the truck driven by deceased approach-ing at a speed of about 40 miles an hour. That he did not strike the truck of the deceased but that the truck of the deceased rammed into the side of the truck driven by defendant. The pictures of the truck driven by defendant substantiate his testimony that defendant's truck was not struck in front as all of the damage was done to the right side of the truck operated by defendant. The grillwork in the front of the truck was not damaged at all but the right front fender and the right front wheel were damaged. Other witnesses who came to the scene of the collision shortly after it occurred testified for the defendant that the impact occurred north of the center line of the intersection, the witness Pugh even going so far as to say that the impact occurred six feet north of the center of the intersection and a little east. This testimony alone was sufficient to require the court to submit an instruction on the theory of the defendant. There was no instruction at all submitting the theory of the defendant although the court did submit an instruction on excusable homicide due to accident and misfortune.

The defendant's whole theory is based upon that provision of the statute which provides: "The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway." 47 O.S.1953 Supp. § 121.6, paragraph (a). If the defendant's theory was correct, the truck he was driving entered the intersection first and the deceased was guilty of a violation of the rules of the road by not stopping. We cannot conclude that a man has been fairly tried when the instructions which were given were prepared solely with reference to the evidence of the State and were silent on the only real issue presented by the testimony on behalf of the accused, and for that reason the case will have to be reversed and remanded for a new trial where a jury by proper instructions can be advised as to the issues of the case presented for their determination.

The judgment and sentence of the District Court of Cleveland County is reversed and remanded for a new trial.

BRETT and POWELL, JJ., concur.